*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0306p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    *Plaintiff-Appellee,*

    *v.*

No. 04-1831

JEROME WHITEHEAD,

    *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 03-80282—Nancy G. Edmunds, District Judge.

Argued: June 17, 2005

Decided and Filed: July 20, 2005

Before: NELSON and GILMAN, Circuit Judges; DONALD, District Judge.*

---

**COUNSEL**

**ARGUED:** David C. Tholen, FEDERAL PUBLIC DEFENDERS OFFICE, Detroit, Michigan, for Appellant. Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** David C. Tholen, FEDERAL PUBLIC DEFENDERS OFFICE, Detroit, Michigan, for Appellant. Saima S. Mohsin, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

---

**OPINION**

---

    RONALD LEE GILMAN, Circuit Judge. Jerome Whitehead was apprehended by the police in a dilapidated, uninhabitable house in Detroit with several grams of crack cocaine on his person and a loaded firearm nearby. He was indicted for being a felon in possession of a firearm, for possessing drugs with the intent to distribute, and for possessing the firearm in connection with his drug dealings. Whitehead subsequently moved the district court to suppress the evidence taken from the house. The district court denied his motion and rejected his request for an evidentiary hearing on the matter. Whitehead was later found guilty by a jury on each of the three counts and sentenced by the court to 130 months of imprisonment and to three years of supervised release. For the reasons set forth below, we **AFFIRM** Whitehead's

---

*The Honorable Bernice B. Donald, United States District Judge for the Western District of Tennessee, sitting by designation.

1

conviction, but **REMAND** the case for resentencing in accordance with *United States v. Booker*, 125 S. Ct. 738 (2005).

## I. BACKGROUND

### A.      Factual background

Police officers had received complaints that drugs were being sold at 1299 Ashland, a rundown house in a blighted section of Detroit, Michigan, even before the facts of the present case unfolded. On February 24, 2003, a confidential informant retained by the police department attempted—but failed— to purchase drugs at the house. The police officers observing the residence, however, saw at least five individuals engage in apparent narcotics transactions at the house's front door. On February 25, 2003, police officers saw another three individuals who appeared to be buying drugs at the house. When Officer Keith Marshall approached one of these individuals, the man showed him a plastic bag containing what Officer Marshall believed to be crack cocaine. The officer obtained a search warrant for 1299 Ashland the next day, February 26, 2003.

When the police entered the house on February 26, they discovered the defendant, Whitehead, seated at a table on the first floor. Whitehead fled into the basement, where he was apprehended by the police. A few feet away from where Whitehead had been seated, the police saw a shotgun, loaded with three rounds of ammunition, leaning against a couch. Another individual, Dwight Peterson, was found on the second floor of the house.

A search of Whitehead's person yielded 37 small plastic bags filled with crack cocaine tucked inside one of his socks, as well as $67 in small bills found in his pants pocket. Whitehead informed the police that his address was 447 Ashland, not 1299 Ashland. Peterson, on the other hand, told at least one police officer that he was homeless, but was "squatting" at the 1299 Ashland house.

Two of the officers later testified at trial that the house was unfit for habitation. One of the them, Sergeant Rodger Johnson, stated that

> [t]he dwelling is totally dilapidated. There's no running water, the electricity was bootlegged, was connected straight from the pole and ran directly to the house and connected to a large orange extension cord. That's how power was brought into the house. No running water, no gas. For appliances, there was a refrigerator that was in the middle of the kitchen floor that wasn't connected to anything. There was trash everywhere.

Officer Marshall testified that the house lacked, among other things, running water, linens, towels, dishes, and glasses. In addition, Officer Marshall stated that he found no documents suggesting that Whitehead lived there. Whitehead, for his part, admits that he did not live in or own the dwelling. He nonetheless claims that "he had a fairly long-time association with the owner of the house, [that] he knew the gentleman prior to the date that he was at the residence, and [that] he had been staying off and on at the residence, though not sleeping there, for . . . three days prior to the search warrant being executed."

### B.      Procedural background

Whitehead was indicted by a federal grand jury for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (Count One), for possessing controlled substances with the intent to distribute, in violation of 18 U.S.C. § 841(a)(1) (Count Two), and for possessing a firearm in furtherance of his drug dealing activities, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three). He subsequently moved to have the evidence taken from the Ashland residence suppressed on the grounds that the search violated his Fourth Amendment right against an unlawful search and seizure.

The district court denied his motion, as well as his request for an evidentiary hearing. Whitehead was later convicted by a jury on all three counts. He was then sentenced by the district court to 70 months of incarceration on Counts One and Two, to run concurrently, and 60 months of incarceration on Count Three, to run consecutively. Whitehead was also sentenced to three years of supervised release. This timely appeal followed.

## II. ANALYSIS

### A.      Standard of review

"Factual findings supporting a district court's ruling on a motion to suppress are upheld unless clearly erroneous, but 'the court's final determination as to the reasonableness of the search is a question of law reviewed de novo.'" *United States v. Yoon*, 398 F.3d 802, 805 (6th Cir. 2005) (citation and quotation marks omitted). In addition, where a motion to suppress has been denied by the district court, this court "must consider the evidence in the light most favorable to the government." *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998) (en banc).

With regard to Whitehead's alternate claim that the evidence was insufficient to support his conviction, "a defendant claiming insufficiency of the evidence bears a heavy burden." *United States v. Maliszewski*, 161 F.3d 992, 1005 (6th Cir. 1998). This court, in evaluating such a claim, will examine "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Zuern v. Tate*, 336 F.3d 478, 482 (6th Cir. 2003) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The court will not "weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Davis*, 177 F.3d 552, 558 (6th Cir. 1999). To the contrary, the court will "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001).

### B.      Whitehead's motion to suppress

Whitehead's principal argument on appeal is that the district court erred when it determined that Whitehead lacked a legitimate expectation of privacy at the 1299 Ashland house, which he concedes is not his residence. A place to be searched, however, "need not be [the defendant's] 'home,' temporary or otherwise, in order for him to enjoy a reasonable expectation of privacy there. The Fourth Amendment protects people, not places, and provides sanctuary for citizens wherever they have a legitimate expectation of privacy." *Minnesota v. Olson*, 495 U.S. 91, 96 n.5 (1990) (finding that a defendant who was a houseguest at the residence of two friends had a legitimate expectation of privacy in his own room) (citations and quotation marks omitted); *see also Rakas v. Illinois*, 439 U.S. 128, 143 (1978) ("[The] capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place."). In order to claim Fourth Amendment protection, a defendant must therefore demonstrate that he possessed a legitimate expectation of privacy in the area searched.

A defendant, however, "must satisfy a two-pronged test to show a legitimate expectation of privacy: 1) he must manifest an actual, subjective expectation of privacy; and 2) that expectation [must be] one that society is prepared to recognize as legitimate." *United States v. Pollard*, 215 F.3d 643, 647 (6th Cir. 2000). These factors apply in a case where, as here, the defendant claims to be the homeowner's guest.

As an initial matter, Peterson, the presumptive proprietor of the 1299 Ashland house, informed Sergeant Johnson that he was "squatting in the location" and that he was "homeless." Sergeant Johnson also testified that he had no "reason to believe that [Peterson] was residing in the premises legitimately." This court has in the past concluded that those who inhabit a residence wrongfully may not claim a legitimate expectation of privacy in the property. *See McRae*, 156 F.3d at 711 (concluding that a defendant who had been living in a vacant house for approximately one week had failed to demonstrate that he had a legitimate

expectation of privacy); *United States v. Ross*, No. 00-6453, 2002 WL 1478586 (6th Cir. July 9, 2002) (unpublished) (holding that a defendant who was squatting in his apartment after failing to pay the rent for several months failed to demonstrate a legitimate expectation of privacy); *see also United States v. Dodds*, 946 F.2d 726 (10th Cir. 1991) (concluding that a defendant apprehended in an abandoned apartment where he sometimes slept had failed to demonstrate that he had a legitimate expectation of privacy).

The present case is factually similar to *Minnesota v. Carter*, 525 U.S. 83 (1998). In *Carter*, a police officer looking in through a window saw the two defendants stuffing plastic bags with what appeared to be cocaine. The police discovered that the defendants had come to the apartment for the sole purpose of packaging the cocaine, and that neither was an occupant. In rejecting their claim that the evidence taken from the apartment should be suppressed, the Supreme Court made an important distinction between overnight guests and casual guests, holding that "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." *Id.* at 90. It further concluded that "the purely commercial nature of the transaction engaged in here, the relatively short period of time on the premises, and the lack of any previous connection between respondents and the householder, all lead us to conclude that respondents' situation is closer to that of one simply permitted on the premises." *Id.* at 91; *see also United States v. Harris*, 255 F.3d 288, 294-95 (6th Cir. 2001) ("Although an overnight guest may possess a legitimate expectation of privacy in a residence being searched, a temporary visitor to a residence may claim no such protection. This is particularly true where, as here, the person seeking the protections of the Fourth Amendment was on the premises for the sole purpose of engaging in drug-related business transactions.") (citations omitted).

Whitehead argues that "he was more than a casual visitor to the Ashland premises" because he "knew the homeowner, Dwight Peterson, from living on Ashland, himself. He knew Mr. Peterson for 5 months prior to the search. During that period he frequently visited Mr. Peterson at the residence and spent time with him. In addition, he frequently ate meals with Mr. Peterson." But Whitehead also admitted during the suppression hearing that he never once slept at the residence as an overnight guest. Furthermore, testimony from the police officers established that the house was dilapidated and unlivable, making it unlikely that it served any residential function. Whitehead also failed to present any evidence (repair bills, phone records, etc.) linking him to the residence. These facts, taken together, suggest that Whitehead's visits to the 1299 Ashland house were likely for the "sole purpose of engaging in drug-related business transactions." *Harris*, 255 F.3d at 295. And Whitehead's own admission that he was never once slept at the house precludes application of the Supreme Court's conclusion that "an overnight guest in a home may claim the protection of the Fourth Amendment." *Carter*, 495 U.S. at 90.

Because Whitehead failed to refute Peterson's admission that Peterson was an illegal squatter, and because Whitehead presented no evidence establishing more than his own casual, business-related association with the property, the district court did not err in denying Whitehead's motion to suppress the evidence taken from the 1299 Ashland property. We therefore affirm the district court's judgment on this issue and have no need to consider Whitehead's further argument that the search warrant obtained by the police officers lacked probable cause.

## C.        Sufficiency of the evidence

Whitehead also contends that, even if the items taken from the 1299 Ashland property are admissible, the evidence presented at trial was nevertheless insufficient to support his conviction on all three counts. With regard to Count One (felon in possession of a firearm), Whitehead argues that "[t]he only evidence linking Defendant to the firearm recovered from 1299 Ashland was the testimony of Officer Marshall, Officer Kleinsorge, and Sergeant Johnson. Each officer saw the firearm inside the residence but no officer ever saw Defendant in physical possession of the shotgun." But Whitehead does not dispute the fact that, when accosted by the police, the shotgun was nearby. He further concedes the fact that he was the only person on the first floor of the house, and that Peterson, the only other person in the house, was apprehended by the police on the second floor. These facts, taken together, could lead a reasonable trier

of fact to conclude that Whitehead was in constructive possession of the weapon. *See United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998) ("Proof that the person has dominion over the premises where the firearm is located is sufficient to establish constructive possession.") (citations and quotation marks omitted). Whitehead's argument that the evidence was insufficient to support his conviction on Count One is therefore unpersuasive.

Whitehead next argues that his conviction on Count Two (possession of a controlled substance with the intent to distribute) is unsupportable because there was no evidence linking his acknowledged crack cocaine possession with an attempt to sell it. In particular, Whitehead argues that "no Government witnesses testified to seeing Defendant engaged in drug dealing from the residence. In addition, on the day of the search, no officer saw pedestrian traffic around the residence suggesting drug sales."

Whitehead's argument, however, overlooks the fact that the search of 1299 Ashland was predicated upon complaints of drug trafficking activity that had been observed by several police officers. Furthermore, the fact that the crack cocaine found in Whitehead's sock was packaged in 37 separate plastic bags is far more consistent with the idea that it had been prepared for individual resale than for Whitehead's personal use. *See United States v. Sanders*, 341 F.3d 809, 816-17 (8th Cir. 2003) (concluding that the defendant's action in dividing his supply of methamphetamine into "twenty packets, each containing about a one-quarter gram of methamphetamine," was additional evidence to support a conviction on the charge of intent to distribute controlled substances). These facts, when taken together, could lead a reasonable trier of fact to conclude that Whitehead was in possession of the crack cocaine with the intent to distribute. His argument that the evidence was insufficient to support his conviction on this charge is therefore unpersuasive.

Whitehead also contests the sufficiency of the evidence used to convict him on Count Three (possession of a firearm in furtherance of his drug dealings). He argues that "there was no credible evidence that the recovered shotgun was connected to any drug distribution on Defendant's part." The present case, however, is controlled by *United States v. Mackey*, 265 F.3d 457 (6th Cir. 2001). In that case, the police found the defendant standing outside a house, holding a sack containing cocaine. The police then searched the house and found a shotgun. Initially, the court noted that "[i]n order for the possession to be in furtherance of a drug crime, the firearm must be strategically located so that it is quickly and easily available for use." *Id.* at 462. It further observed that "[o]ther factors that may be relevant to a determination of whether the weapon was possessed in furtherance of the crime include whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found." *Id.* And, in a factual analysis that applies directly to the facts in the present case, the court concluded that

> there was an illegally possessed, loaded, short-barreled shotgun in the living room of the crack house, easily accessible to the defendant . . . . Defendant, stopped by police near the gun, possessed cocaine and a large sum of cash. From the evidence presented, a reasonable jury could infer that the purpose of the firearm was to provide defense or deterrence in furtherance of the drug trafficking for which defendant was arrested.

*Id.* at 462-63.

Like the defendant in *Mackey*, Whitehead was apprehended near the shotgun. The police also found multiple packets of crack cocaine stuffed in his sock and $67 in small bills in his pants pockets. From this evidence, a reasonable trier of fact could easily conclude that Whitehead was in possession the firearm in furtherance of his drug-possession. Whitehead's argument on Count Three is therefore unpersuasive.

**D.　　Whitehead's sentence**

Whitehead's final argument on appeal is that his sentence should be remanded in light of *United States v. Booker*, 125 S. Ct. 738 (2005). The Presentence Report calculated Whitehead's Sentencing

Guidelines range to be between 130 to 147 months of imprisonment. Whitehead was sentenced by the district court to 130 months of imprisonment, at the bottom end of that range (70 months imprisonment on Counts One and Two, and an additional 60 months on Count Three).

The government concedes that Whitehead's sentence with regard to Counts One and Two should be remanded under *Booker*. We agree. *See United States v. Barnett*, 398 F.3d 516 (6th Cir. 2005) (remanding for resentencing a defendant who was sentenced in the middle of the Guidelines range because "the district court might have exercised its discretion to impose a lower sentence had it known that the Guidelines were advisory"); *see also United States v. Oliver*, 397 F.3d 369, 380 n.3 ("We would be usurping the discretionary power granted to the district courts by *Booker* if we were to assume that the district court would have given [the defendant] the same sentence post-*Booker*.").

We have no need, however, to remand Count Three for reconsideration because 118 U.S.C. § 924(c)(1)(A) requires a minimum sentence of five-years. *See United States v. Johnson*, No. 03-6477, 2005 WL 1059276, at *5 (6th Cir. May 5, 2005) (unpublished) ("*Booker* does not apply when the defendant has been sentenced to the mandatory minimum."). Furthermore, we have no need to consider Whitehead's argument that "the jury did not render a verdict as to the specific amount of crack cocaine relating to the charge in Count Two" because Whitehead acknowledges that his sentences for Counts One and Two run concurrently, and he does not claim that there was a Sixth Amendment error with regard to Count One. These facts make any such violation with regard to Count Two harmless.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** Whitehead's conviction, but **REMAND** the case for resentencing in accordance with *Booker*.