NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0025n.06
Filed: January 9, 2006

No. 04-5818/6019

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **ON APPEAL** FROM THE |
| **Plaintiff-Appellee,** | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| NAWAT NGAMWUTTIBAL, (04-5818); SHAWN | ) | **O P I N I O N** |
| SORRELLS, (04-6019), | ) | |
| | ) | |
| **Defendants-Appellants.** | ) | |
| | ) | |

BEFORE: NORRIS and BATCHELDER, Circuit Judges; COHN, District Judge.[*]

**ALAN E. NORRIS, Circuit Judge.** This appeal arises from the investigation and prosecution of a multi-defendant drug trafficking conspiracy in Chattanooga, Tennessee. Eventually, a grand jury returned a twenty-three count indictment charging seventeen individuals with trafficking in methamphetamine, cocaine, ecstasy, and marijuana. All of the defendants except for Shawn Sorrells eventually pleaded guilty. On appeal, Sorrells contests the denial of his motion to suppress the fruits of a search of his apartment, his conviction for possessing a firearm in connection with a drug trafficking offense, and the use of a prior conviction in his criminal history calculation. For his part, Nawat Ngamwuttibal (a.k.a. "Tom") challenges the calculation of his

---

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

sentence in the wake of *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

## I.

The first count of the indictment, which was returned on May 28, 2003, charges all seventeen defendants with conspiring to distribute 500 or more grams of methamphetamine, five kilograms or more of cocaine, MDMA (known as ecstacy), and marijuana in violation of 21 U.S.C. § 846. Defendant Ngamwuttibal, a Thai national, was charged with two counts of possessing a firearm in furtherance of a drug trafficking offense, 18 U.S.C. § 924(c), and with five counts of substantive drug trafficking, 21 U.S.C. § 841(a). For his part, in addition to the conspiracy count, defendant Sorrells was charged with one count of substantive drug trafficking and one count of possession of a firearm in furtherance of drug trafficking.

As mentioned above, sixteen of the seventeen individuals charged entered into guilty pleas with the government. Defendant Ngamwuttibal pleaded guilty to the conspiracy charge and to one count of possession of a firearm in furtherance of drug trafficking. In exchange, the government agreed to dismiss the remaining charges and, assuming continued cooperation from Ngamwuttibal, to recommend a downward departure based upon substantial assistance. U.S.S.G. § 5K1.1. At sentencing, defendant received the benefit of a downward departure and also of a three-level adjustment for acceptance of responsibility. As a result, he was sentenced to 144 months of incarceration (84 months on the conspiracy charge followed by the mandatory minimum of 60 months on the firearms charge) and four years of supervised release.

After a jury returned a guilty verdict on all three counts in which he was charged, the district court sentenced Sorrells to the mandatory minimums of 120 months of incarceration for conspiracy to be followed by 60 months for the firearms count. He also received a five-year term of supervised release.

**II.**

*Ngamwuttibal's Sentencing*

The pre-sentence report ("PSR") prepared for Ngamwuttibal set the base offense level at 32. The probation officer converted the various drugs seized to their marijuana equivalents to establish the total drug quantity used to set the base offense level. The conversion resulted in a total of 2026.97 kilograms of marijuana. U.S.S.G. § 2D1.1(c)(4) (2003) (more than 1000 but less than 3000 kg. of marijuana results in a base offense level of 32). The PSR also recommended that defendant receive a four-level upward adjustment based upon his role in the offense. U.S.S.G. § 3B1.1(a). It also suggested that defendant be granted a three-level decrease for his acceptance of responsibility for a total offense level of 33. When coupled with a criminal history of I, this calculation resulted in a guidelines range of between 135 and 168 months. However, because the sentence for the firearms conviction must run consecutively, the effective range was 195 to 228 months of imprisonment.

The district court held a sentencing hearing on June 18, 2004. At the hearing, defense counsel indicated that he had made two "pending" objections to the recommendations of the PSR but had resolved them after talking with the AUSA. He then gave the district court the following explanation:

> The agreement we've had is that we are withdrawing our first objection regarding drug quantity amounts, and that as to Objection 2 regarding the points allocated for leader or role in the offense, the government has agreed with us that on Paragraph 51 where it shows a four-point enhancement, that that should be reduced to a two-point enhancement.

After hearing a proffer from the government concerning the role in the offense adjustment, the court ruled as follows:

> [T]he Court makes a finding that the defendant supervised Mr. Rattenxay and Mr. Mathis. That gives him an aggravating role in the offense. The aggravating role would be two levels instead of four levels. The presentence report indicated that the defendant's offense level would be a 33. A reduction of two points would bring it down to a 31.

When asked by the court, counsel indicated that he had no other objections.

The government then made a motion for downward departure based upon defendant's substantial assistance. U.S.S.G. § 5K1.1. It noted that defendant had been "the key witness" against Sorrells and had provided further information about on-going drug trafficking. The court granted the motion:

> [T]he Court will grant the government's motion, and the Court will depart downward three levels in the defendant's case. A three-level departure would take us down to a 28. The defendant remains in the same criminal history category. So that results in a guidelines range of 78 to 97 months. If we add the 60 months for the gun count, then the guideline range would become 138 to 157 months.
>
> . . . .
>
> The Court sometimes uses an alternative way of calculating the guidelines, and that is the way the Court does it most often. What the Court does is to try to figure out where the original guideline range would be if there had been no mandatory sentence but looking at the sentencing guidelines as a whole. So looking at 168 to 195 months, Criminal History Category I, looks like that would fall within 35. And a [three]-level reduction from that would take us down to 32, which is 121 to 151 months. . . .

> If the Court uses that method, Mr. Dupree [defense counsel], would that range, then, be the correct range?
>
> MR. DUPREE: Yes, Your Honor, it will be. And it would be beneficial to the defendant, rather than prejudicial.

The court then imposed sentence:

> The Court is going to impose a sentence in your case somewhat near the middle of the guideline range. You are not just someone who got involved in drugs; you actually got involved at a fairly significant level. Even considering the concession the government made, it is conceded that you supervised other people in the distribution of drugs. The Court believes that a sentence of 144 months would be appropriate in this case.

Despite the favorable sentence that he received, defendant now contends that *Booker* entitles him to resentencing.

Defendant's plea agreement acknowledges "that he understands that the Court will determine the appropriate sentence under the Sentencing Guidelines . . . ." In addition, at the change of plea hearing, the district court advised defendant that he would be sentenced under the guidelines. The government relies upon our decision in *United States v. Bradley*, 400 F.3d 459 (6th Cir. 2005), which it reads for the proposition that, when a defendant agrees to be sentenced under the guidelines pursuant to a written plea agreement and to waive his right to appeal, he cannot demand to be resentenced pursuant to *Booker*. *Id.* at 465 ("Simultaneous waivers of the right to appeal by two parties to a plea agreement . . . would amount to little if future changes in the law permitted the benefitted party nonetheless to appeal.") However, in a letter to this court submitted after briefing, the government acknowledges that we have distinguished *Bradley* in two subsequent opinions. In *United States v. Amiker*, 414 F.3d 606 (6th Cir. 2005), this court limited *Bradley* in these terms:

> This court's holding in *United States v. Bradley*, 400 F.3d 459 (6th Cir. 2005), does not alter our conclusion. First and foremost, the court in *Bradley* enforced a provision in the plea agreement in which the defendant waived his right to appeal. Thus, *Bradley* is inapplicable here; Amiker did not waive his right to appeal. But the court in *Bradley* also suggested that a defendant, by explicitly agreeing to be sentenced under the Guidelines, waives any right to *Booker*-resentencing. If we were to construe this as an alternative holding in *Bradley*, Amiker, who also explicitly agreed to be sentenced under the Guidelines, may have waived his right to resentencing. But we think this language in *Bradley* is best interpreted as merely additional rationale serving only to buttress the court's decision that the defendant had waived his right to appeal.

*Id.* at 607; *see also United States v. Puckett*, 422 F.3d 340, 343 (6th Cir. 2005). Similarly, defendant Ngamwuttibal did not waive his right to appeal in his plea agreement and *Bradley* is not controlling.

Although *Bradley* does not apply to defendant's situation, his sentence does not run afoul of the Sixth Amendment. *Booker* explicitly reaffirmed the holding of *Apprendi v. New Jersey*, 530 U.S. 466 (2000): "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict *must be admitted by the defendant* or proved to a jury beyond a reasonable doubt." *Booker*, 125 S. Ct. at 756 (emphasis added). As the portions of the sentencing hearing quoted above establish, defendant withdrew his objections to the calculation of the drug quantity and to the two-level enhancement for role in the offense. This court has held that failure to object to a recommended finding contained in a PSR – specifically, drug amount – is equivalent to admitting that fact with respect to a Sixth Amendment *Booker* analysis. *United States v. Adkins*, 429 F.3d 631, 631-32, (6th Cir. 2005). Similarly, when a defendant withdraws an objection to a recommended factual finding that affects his sentence, he admits it and thereby puts it beyond the reach of *Booker*.

While no Sixth Amendment violation occurred, defendant was sentenced under what the federal courts have been calling a "mandatory" guidelines scheme. This court has been routinely employing plain error analysis to vacate sentences imposed by a district court under a mandatory scheme and remanding to permit resentencing under an "advisory" guidelines. *See, e.g., United States v. Hudson*, 405 F.3d 425, 444 (6th Cir. 2005); *United States v. Barnett*, 398 F.3d 516, 527-29 (6th Cir. 2005). However, we have carved out an exception to the general rule that applies for those cases where "the trial record contains clear and specific evidence that the district court would not have, in any event, sentenced the defendant to a lower sentence under an advisory Guidelines scheme." *Barnett* at 529. In our view, this is such a case. Defendant Ngamwuttibal received substantial benefits both from his plea bargain and at sentencing. The court granted a three-level decrease for acceptance of responsibility, imposed a lesser increase than that proposed in the PSR for role in the offense, and granted a significant downward departure pursuant to U.S.S.G. § 5K1.1. The court then calculated the sentencing range in a way that defense counsel acknowledged "would be beneficial to the defendant, rather than prejudicial." Given the circumstances, we conclude that the trial record contains the kind of "clear and specific evidence that the district court would not have, in any event, sentenced the defendant to a lower sentence under an advisory Guidelines scheme," which *Barnett* requires to overcome the presumption of prejudice. *Barnett* at 529; *see also United States v. Webb*, 403 F.3d 373, 382-83 (6th Cir. 2005).

*Sorrells' Assignments of Error*

    1. Motion to Suppress

Sorrells contends that the district court erred when it denied his motion to suppress evidence seized after his apartment was searched pursuant to a warrant. He takes the position that the affidavit in support of the warrant lacked sufficient specificity to establish the requisite probable cause. In the context of a denial of a motion to suppress, we review the factual findings of the district court for clear error and legal conclusions *de novo*. *United States v. May*, 399 F.3d 817, 822 (6th Cir. 2005) (citing *United States v. Combs*, 369 F.3d 925, 937 (6th Cir. 2004)). Furthermore, when reviewing the sufficiency of an affidavit we give "great deference" to the issuing judge's findings of probable cause. *Id.* (quoting *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000)).

The application for a search warrant of defendant's residence was accompanied by the fifteen-paragraph affidavit of Randy Dunn, a detective with the Chattanooga police. Only the following paragraph named defendant Sorrells:

> On May 9, 2003, Tia Cruz was also interviewed by TFO Mitchell Smith in conjunction with SA Shelton. Cruz stated that Shawn Sorrells lives at the Standifer Place Apartments and drives a camero. She stated that she was told this week by Soulith that Sorrells picked up four ounces of ice from "Tom" this week. She also stated that "Tom" has told her that Sorrells at one time supplied drugs to "Tom" but that Sorrells was not "Tom's" customer. She stated that "Tom" has told her that he was distributing ounces of methamphetamine to Sorrells on a weekly basis. TFO Mitchell Smith went on May 9, 2003 to the Standifer Place Apartments and spoke with management there. The manager told Smith that Sorrells presently lived in Apt. 623, drove a camero, and worked part time in Atlanta. The manager also suspected Sorrells of being involved with drug distribution because there were a lot of people coming in and out of his apartment, and because management had received complaints of the same from neighbors.

Before explicitly referring to Sorrells, the affidavit details the investigation, including the activities of "Tom" Ngamwuttibal, Cruz, and Soulith Rattanxay, who were among those indicted as co-conspirators.

At the suppression hearing, Detective Mitchell Smith, who is mentioned in the affidavit,

testified that he executed the search of Sorrell's apartment and found the following:

> We found two portable safes. We found several items of drug paraphernalia.
> We found a little over six or seven ounces of marijuana in two different locations.
> We found a 357 revolver, a single round of ammunition. There were some ledgers
> that were pertinent to the case or some documentation that was pertinent to the case.
> . . .

With respect to the information in the paragraph of the affidavit quoted above, Smith noted that he

had interviewed Cruz in her apartment while he and another officer were awaiting a search warrant.

At this time, Cruz received a telephone call from co-defendant Ross Achata who mentioned Sorrells.

After Cruz hung up, she provided the officers with further details. Smith later went to the Standifer

Apartments and interviewed the manager on the same day that the affidavit issued.

In its memorandum and order denying the motions to suppress,[1] the district court quoted at

length from Dunn's affidavit before reaching the following decision:

> The affidavit in this instance did establish probable cause to believe
> contraband would be found at defendant Sorrells' residence; and, the affidavit was
> sufficiently detailed to permit the issuing magistrate to make the requisite
> independent determination as to the existence of probable cause. The affidavit set
> out the background of the investigation underlying this case, including Detective
> Dunn's past contacts with Tia Cruz as well as other information which Cruz had
> provided to the law enforcement officers as part of the investigation underlying this
> action.
>
> Further, paragraph 14 of the affidavit set out the information that a reliable
> informant, Tia Cruz, had information that defendant had picked up four ounces of
> "ice" that week from co-defendant Ngamwuttibal a/k/a "Tom" and that defendant
> was at one time a supplier to "Tom" but is now "Tom's" customer. . . . Although
> Officer Smith's efforts to corroborate Cruz's information were limited by constraints

---

[1] In addition to Sorrells, defendants Ngamwuttibal and Hung Nguyen filed motions to suppress. The denials of those motions are not before us on appeal.

of time and the desire not to reveal the investigation to defendant Sorrells, there was nevertheless some very limited corroboration of Cruz's information in the affidavit.

Finally, the affidavit also sets forth information which Officer Smith learned from the manager of the Standifer Place Apartments. This information obviously does not establish probable cause. However, the statement that the manager of the Standifer Place Apartments suspected drug activity in Sorrells' apartment based upon his own observations as well as the observations of Sorrells' neighbors is consistent with the information already provided by Cruz. Thus, it buttresses Cruz's information and contributes to a finding of probable cause.

In the alternative, the district court concluded that "the law enforcement officers acted in objectively reasonable good faith . . . on the search warrant, and pursuant to the good faith exception found in *United States v. Leon*, 468 U.S. 897 (1984), the evidence seized from Sorrells' residence should not be excluded."

This issue need not detain us long. As the district court correctly pointed out, the affidavit itself contained considerable information of an on-going drug trafficking conspiracy. Although the references to Sorrells were limited, the allegations were sufficient to tie him to that conspiracy and thereby to establish probable cause for a warrant to search his apartment.

2. Firearms Conviction

Defendant challenges the sufficiency of the evidence with respect to his conviction for possession of a firearm in furtherance of a drug trafficking crime. 18 U.S.C. § 924(c). While he concedes possession of the firearm, he contends that the evidence linking it to drug trafficking was insufficient to sustain guilt beyond a reasonable doubt. It is axiomatic that "[i]n determining whether the evidence supporting [the defendant's] conviction is sufficient, we must ask 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

The parties each cite to *United States v. Mackey*, 265 F.3d 457 (6th Cir. 2001), for the proper interpretation of the "in furtherance of" requirement of § 924(c).  After reviewing the legislative history of the statute in the wake of amendments occasioned by *Bailey v. United States*, 516 U.S. 137 (1995), we supplied the following guidance:

> In light of Congress' intent that "in furtherance of" be a more stringent requirement than "during and in relation to,"  we emphasize that the possession of a firearm on the same premises as a drug transaction would not, without a showing of a connection between the two, sustain a § 924(c) conviction. In order for the possession to be in furtherance of a drug crime, the firearm must be strategically located so that it is quickly and easily available for use. *See United States v. Feliz-Cordero*, 859 F.2d 250, 254 (2d Cir. 1988) (stating that a gun in a dresser drawer with drugs in the bedroom did not constitute "use" under § 924 because the evidence was insufficient to show the gun was "strategically located so as to be quickly and easily available for use during such a transaction"), *overruled by Bailey*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472. Other factors that may be relevant to a determination of whether the weapon was possessed in furtherance of the crime include whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found.  *See United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000) (suggesting consideration of these factors to determine possession in furtherance of a drug crime). The list of factors is not exclusive, but it helps to distinguish possession in furtherance of a crime from innocent possession of a wall-mounted antique or an unloaded hunting rifle locked in a cupboard.

*Mackey* at 462; *see also United States v. Lawrence*, 308 F.3d 623, 629-30 (6th Cir. 2002) (reviewing legislative history to conclude "Congress chose to make § 924(c) more stringent than mere possession, but less stringent than active employment").

At trial, Detective Smith testified that, during the search of Sorrells' apartment, he recovered a Taurus .357 handgun in a box in a walk-in closet. It was unloaded in a holster with one bullet next to it. Defendant argues that this testimony fails to show that the firearm was strategically located or otherwise available during drug trafficking crimes. Furthermore, co-defendant Achata testified that he once joked with Sorrells about the gun having only one bullet. However, Achata went on to say that he saw the firearm "fairly often" and that defendant "would keep it maybe under the couch or in the kitchen drawer."

Another member of the conspiracy, Steven Hawk, testified that he worked for Ngamwuttibal and that he was sent to Sorrells' apartment on one occasion to pick up some ecstacy pills. According to Hawk, "[Sorrells] was waiting at the door for me, let me on in, and I walked in, and just I kind of was apprehensive about going in because there was a gun laying on his kitchen counter." When Hawk expressed his nervousness to Sorrells, he told Hawk not to worry about the gun, telling him: "I just keep that for protection because I got robbed one time."

In addition to the testimony of Hawk and Achata, another co-conspirator, Ashely Foss, recalls defendant removing the gun from a kitchen drawer when she and Achata came to his apartment to pick up marijuana. When asked, Foss was not sure of why defendant had a gun: "I don't know what the point of showing [Achata the gun] was or why he used a gun."

Given the standard of review, a rational juror could conclude beyond a reasonable doubt that defendant possessed the firearm in furtherance of a drug trafficking crime. If the only evidence had been that it was found unloaded in a box on the floor of the bedroom closet, it might be argued that the evidence was insufficient to support the conviction. However, several witnesses testified that

the gun was nearby while drugs were around or being traded. Even though the witnesses never saw it being used, the evidence is sufficient to tie it to the conspiracy.

Sorrells' Sentence

The district court imposed a ten-year mandatory minimum for trafficking in 500 grams of methamphetamine, as charged in the indictment, and a consecutive five-year minimum sentence for possession of a firearm in furtherance of a drug trafficking crime.

In calculating the criminal history category, the probation officer took into account that defendant had a prior conviction for driving under the influence and that he committed the crimes of conviction while on probation for this offense. As a result, the PSR recommended a criminal history category of II. Defendant contends that the district court violated *Booker* because it enhanced his sentence based upon a prior conviction. Not only does this argument ignore the fact that *Booker* retains the exception for the prior convictions first articulated in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), *Booker*, 125 S.Ct. at 756, it is factually inaccurate. At the sentencing hearing, the district court explicitly accepted defendant's argument that he was not on probation at the time of the offense and therefore sentenced him based upon a criminal history category of I.

Defendant also alludes to the difference between advisory and mandatory guidelines. As already noted in our discussion of defendant Ngamwuttibal's sentence, this circuit has remanded sentences imposed under a mandatory guidelines regime even if no Sixth Amendment error occurred. *See, e.g., United States v. Navarro-Diaz*, 420 F.3d 581, 589 (6th Cir. 2005) (quoting *United States v. Alva*, 405 F.3d 383, 385 (6th Cir. 2005)). However, where, as here, the district

court imposed the mandatory minimum sentence provided by statute, remand is not required

pursuant to *Booker* because the district court would not have discretion to impose a shorter term of

imprisonment on remand. *United States v. Smith*, 419 F.3d 521, 532 (6th Cir. 2005) (declining to

remand drug trafficking conviction because defendant sentenced to mandatory minimum); *United

States v. Whitehead*, 415 F.3d 583, 590 (6th Cir. 2005) (remand not necessary with respect to §

924(c) conviction because it prescribes a five-year mandatory minimum).

Because defendant was sentenced to the minimum required by the statutes of conviction,

*Booker* does not apply. We therefore affirm the district court's judgment.

## III.

The judgments entered by the district court with respect to defendants Ngamwuttibal and

Sorrells are **affirmed**.