**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 8, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

RAUL GUZMAN,

    Defendant - Appellant.

No. 24-2122

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:22-CR-01915-WJ-1)**
_____

J.K. Theodosia Johnson, Assistant Federal Public Defender (Margaret Katze, Federal Public Defender, with her on the briefs), Office of the Federal Public Defender for the District of New Mexico, Albuquerque, New Mexico, appearing for Appellant.

Paul J. Mysliwiec, Assistant United States Attorney (Holland S. Kastrin, Acting United States Attorney, with him on the brief), Office of the United States Attorney for the District of New Mexico, Albuquerque, New Mexico, appearing for Appellee.
_____

Before **MATHESON**, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.
_____

Raul Guzman appeals the denial of his motion to suppress evidence found in a camper trailer where he was living. The trailer was located on property where the

City of Albuquerque had declared two buildings substandard.  Exercising jurisdiction

under 28 U.S.C. § 1291, we affirm.  Mr. Guzman lacked a reasonable expectation of

privacy in the trailer and thus lacked Fourth Amendment standing to challenge the search.

## I.  BACKGROUND

### A.  *Factual Background*[1]

### 1.  **The Property**

Jeffrey Cannon owned property in Albuquerque, New Mexico.[2]  In

December 2020, the City of Albuquerque ("the City") declared two buildings on the

property to be "substandard."[3]  The City ordered the buildings vacated, secured the

building entrances, and posted identical yellow notices on the doors.  The notices

stated:

---

[1] We take these facts from the district court's order and evidentiary hearing, "view[ing] the evidence in the light most favorable to the determination of the district court."  *United States v. Johnson*, 43 F.4th 1100, 1107 (10th Cir. 2022) (quotations omitted).

[2] Mr. Cannon had entered a purchase agreement and real estate contract with the prior owner, John Stockman.  Although Mr. Stockman later repossessed the property, we assume Mr. Cannon owned the property during the relevant time.

[3] Under the Albuquerque Uniform Housing Code, when a building is declared substandard, the Code Enforcement Department initiates proceedings to vacate the building, post notices, and require the owner to abate the unsafe conditions.  *See* Albuquerque, N.M., Unif. Hous. Code § 14-3-5-3(A)(1), (D)(1).  If the owner fails to commence repairs within 30 days, the code states that "[n]o person shall be on the property without the written permission from the Department or and [sic] with the permission on them at all times while on the property."  *Id.* § 14-3-5-6(A)(3)(b).  It is a misdemeanor to violate the code or the Department's orders.  *Id.* § 14-3-5-99.

DO NOT ENTER

SUBSTANDARD BUILDING

UNSAFE TO OCCUPY

NO PERSON SHALL RESIDE IN THIS STRUCTURE OR ON THIS PROPERTY. NO PERSON SHALL OCCUPY THIS STRUCTURE OR REMAIN ON THIS PROPERTY PAST DAYLIGHT HOURS.  ONLY PERSONS AUTHORIZED BY THE CITY OR THE OWNER MAY OCCUPY THIS PROPERTY <u>DURING DAYLIGHT HOURS</u> FOR PURPOSES OF REPAIRING, SECURING, OR CLEANING THIS PROPERTY.

IT IS A MISDEMEANOR TO OCCUPY THIS BUILDING OR TO REMOVE OR DEFACE THIS NOTICE.

ROA, Vol. I at 34.  The notices included an inspector's name and phone number.  *Id.*

Here is an image of the notice:



*Id.*

3

After the buildings were declared substandard, Mr. Cannon allowed a friend to park a camper trailer in the property's backyard. There was no posted notice on the trailer.

2. **The Incident**

In September 2022, Albuquerque Police Officers Walker Marion and Alex Castellano accompanied Christopher Armenta, a city code enforcement supervisor, to inspect Mr. Cannon's property for compliance with Albuquerque's housing code. Upon entering the property, the officers checked both buildings' doors to make sure they were locked.

They then approached the trailer. Officer Marion checked the door and, finding it unlocked, opened it. He immediately encountered Mr. Guzman and asked him to show his hands and exit the trailer. Mr. Guzman did not comply with the commands, protesting that he had just awakened. He paused in the doorway with his right hand hidden behind his back. Officer Marion then heard a metal object hit wood, after which Mr. Guzman emerged from the trailer with his hands raised.

Officer Marion handcuffed Mr. Guzman. While being cuffed, Mr. Guzman told the officers he had the owner's permission to stay on the property. Officer Castellano then led Mr. Guzman away while Officer Marion stepped into the open door of the trailer. He spotted and seized a revolver in plain sight.

The officers walked to the front of the property and placed Mr. Guzman in the back of a police car. Shortly thereafter, they arrested Mr. Guzman on an outstanding misdemeanor warrant.

4

B. *Procedural Background*

A grand jury indicted Mr. Guzman for being a felon in possession of a firearm under 18 U.S.C. § 922(g).

1. **Suppression Motion**

Mr. Guzman moved to suppress the evidence obtained in the warrantless entry and search of the trailer.  He contended he had a reasonable expectation of privacy in the trailer because Mr. Cannon granted him permission to stay there and because the posted notices referred only to the substandard buildings and thus did not pertain to the trailer.  He argued the officers violated his Fourth Amendment rights by opening his trailer door, seizing and handcuffing him, and searching the trailer.

The Government argued that Mr. Guzman lacked a reasonable expectation of privacy because his presence on the property violated the Albuquerque Housing Code (the "Code"), regardless of whether he had the property owner's permission.

2. **Evidentiary Hearing**

The district court held an evidentiary hearing on the motion.  The officers' body-camera footage was played, and Mr. Stockman (the property's lienholder), Mr. Armenta, and Officers Marion and Castellano testified.

An investigator from the Federal Public Defender's Office testified that she spoke to Mr. Cannon, who confirmed he owned the property and gave Mr. Guzman permission to stay in the trailer.

Mr. Guzman also testified that, after becoming homeless, he received Mr. Cannon's permission to stay in the trailer.  He began living there in "[e]arly

5

September [2022]," shortly before the encounter with the officers.[4] ROA, Vol. II at 42.

Mr. Guzman admitted to having seen and read the posted notices, including the notices' statements "about a restriction on the property." *Id.* at 44. When pressed, Mr. Guzman said, "I just didn't pay attention to those things, because that wasn't my concern. I didn't own the property." *Id.* at 47-48.

### 3. District Court Order

The district court denied Mr. Guzman's suppression motion. It ruled Mr. Guzman lacked standing to challenge the search of the trailer because he did not have a reasonable expectation of privacy. The court noted that Mr. Cannon's permitting Mr. Guzman to stay in the trailer "provides some evidence in support of" a subjective expectation of privacy. ROA, Vol. I at 72 n.5. But it concluded that any such expectation was objectively unreasonable because the posted notices put him "sufficiently on notice that no one could lawfully occupy or reside on the property." *Id.* at 73-74.

In the alternative, the district court found that, even if Mr. Guzman had Fourth Amendment standing to challenge the search, several exceptions to the warrant requirement justified the officers' actions.

---

[4] Mr. Guzman also testified that he was helping to fix the plumbing while living on the property. The district court rejected this testimony as not credible. Mr. Guzman does not challenge this finding on appeal.

4. **Guilty Plea and Sentencing**

Mr. Guzman pled guilty to the felon-in-possession charge. In his plea agreement, Mr. Guzman retained the right to appeal the district court's denial of the suppression motion only on the grounds argued in district court. He was sentenced to 27 months in prison and three years of supervised release. Mr. Guzman timely appealed.

## II. DISCUSSION

### A. *Legal Background*

1. **Fourth Amendment Standing**

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[T]he Supreme Court has recognized that defendants in federal cases may move a district court to exclude from trial evidence obtained through an unlawful search and seizure," *United States v. Lowe*, 117 F.4th 1253, 1260 (10th Cir. 2024) (citing *Simmons v. United States*, 390 U.S. 377, 389 (1968)), including "evidence deemed to be 'fruit of the poisonous tree,' (i.e., evidence discovered as a direct result of the unlawful activity)," *United States v. Neugin*, 958 F.3d 924, 931 (10th Cir. 2020) (quoting *United States v. Olivares-Rangel*, 458 F.3d 1104, 1108-09 (10th Cir. 2006)).

"In order to challenge the lawfulness of a search and seizure under the Fourth Amendment, a defendant must first establish his or her standing to do so."

*United States v. Marchant*, 55 F.3d 509, 512 (10th Cir. 1995).[5]  "Consequently, 'a threshold issue in deciding a motion to suppress evidence is whether the search at issue violated the rights of the particular defendant who seeks to exclude the evidence.'"  *United States v. Soto*, 988 F.2d 1548, 1552 (10th Cir. 1993) (quoting *United States v. Rascon*, 922 F.2d 584, 586 (10th Cir. 1990)).  Standing exists when "the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place."  *Minnesota v. Carter*, 525 U.S. 83, 88 (1988) (quotations omitted).[6]

2. **Defendant's Standing Burden**

"The Defendant has the burden of establishing his standing."  *United States v. Creighton*, 639 F.3d 1281, 1286 (10th Cir. 2011).  We thus "inquire whether the defendant has established (1) a subjective expectation of privacy in the property

---

[5] The term "standing" in the Fourth Amendment context is a "useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search; but it should not be confused with Article III standing, which is jurisdictional and must be assessed before reaching the merits."  *Terrence Byrd v. United States*, 584 U.S. 395, 410-11 (2018).

[6] A defendant need not show a reasonable expectation of privacy if "the Government obtain[ed] information by physically intruding on persons, houses, papers, or effects . . . within the original meaning of the Fourth Amendment."  *Florida v. Jardines*, 569 U.S. 1, 5 (2013) (quotations omitted).  The "reasonable-expectations test has been *added to*, not *substituted for*, th[is] traditional property-based understanding of the Fourth Amendment, and so is unnecessary to consider when the government gains evidence by physically intruding on constitutionally protected areas."  *Id.* at 11 (quotations omitted).  Mr. Guzman primarily raises the reasonable-expectation-of-privacy theory on appeal.

searched, and (2) that society would recognize that expectation of privacy as objectively reasonable." *Marchant*, 55 F.3d at 513; *Minnesota v. Olson*, 495 U.S. 91, 95-100 (1990).

The defendant satisfies the subjective component by showing he "exhibited an actual (subjective) expectation of privacy," *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (quoting *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)), meaning "the individual has shown that 'he seeks to preserve [something] as private,'" *id.* (quoting *Katz*, 389 U.S. at 351).

The defendant satisfies the objective component by showing his subjective expectation of privacy is "one that society is prepared to recognize as 'reasonable.'" *Id.* (quotations omitted). "[A] court must consider all of the facts and circumstances of the case in determining whether a defendant's subjective expectation of privacy is legitimate." *United States v. Carr*, 939 F.2d 1442, 1445 (10th Cir. 1991) (citing *United States v. Salvucci*, 448 U.S. 83, 91-93 (1980)).

The Supreme Court has held a person lacks an objectively reasonable expectation of privacy in a place in which his presence is "wrongful." *Rakas v. Illinois*, 439 U.S.128, 141 n.9 (1978) (quoting *Jones v. United States*, 362 U.S. 257, 267 (1960)); *Terrence Byrd v. United States*, 584 U.S. 395, 409 (2018) ("No matter the degree of possession and control, the car thief would not have a reasonable expectation of privacy in a stolen car.").

This principle applies to a variety of situations. For example, it includes squatters and trespassers. *See United States v. Ruckman*, 806 F.2d 1471, 1472-74

9

(10th Cir. 1986).[7] It also extends to individuals whose presence is otherwise wrongful despite the owner's consent, such as those in violation of supervised release terms, *see Lowe*, 117 F.4th at 1264-65 (holding that, even if defendant had obtained lawful possession of storage unit, he lacked a reasonable expectation of privacy because "obtaining and using the storage unit violated the terms of his supervised release"), or subject to a no-contact order, *see United States v. Cortez-Dutrieville*, 743 F.3d 881, 884-85 (3rd Cir. 2014); *United States v. Schram*, 901 F.3d 1042, 1045-46 (9th Cir. 2018) (same), or guests of evicted tenants, *see Woodward v. City of Tucson*, 870 F.3d 1154, 1159-60 (9th Cir. 2017).

### 3. Standard of Review

Generally, when reviewing the denial of a motion to suppress, we "view the evidence in the light most favorable to the determination of the district court." *United States v. Johnson*, 43 F.4th 1100, 1107 (10th Cir. 2022) (quotations omitted). "We accept the district court's factual findings unless they are clearly erroneous and

---

[7] Other circuits have concluded the same. *See Amezquita v. Hernandez-Colon*, 518 F.2d 8, 11-12 (1st Cir. 1975) (noting plaintiffs "knew they had no colorable claim to occupy the land" on government-owned land); *United States v. Sanchez*, 635 F.2d 47, 64 (2d Cir. 1980) ("[A] mere trespasser has no Fourth Amendment protection in premises he occupies wrongfully."); *United States v. Whitehead*, 415 F.3d 583, 587-88 (6th Cir. 2005) (affirming district court's conclusion that an "illegal squatter" lacks a legitimate expectation of privacy); *United States v. Curlin*, 638 F.3d 562, 565-66 (7th Cir. 2011) ("[I]ndividuals who occupy a piece of property unlawfully have no claim under the Fourth Amendment."); *United States v. Struckman*, 603 F.3d 731, 747 (9th Cir. 2010) (noting trespassers lack Fourth Amendment standing).

review legal conclusions de novo." *United States v. Young*, 99 F.4th 1136, 1142 (10th Cir. 2023) (citations omitted).

"The existence of a subjective expectation of privacy is a question of fact subject to review for clear error," and "[w]hether any such subjective expectation of privacy is one society would consider reasonable . . . is subject to de novo review." *United States v. Wells*, 739 F.3d 511, 522 (10th Cir. 2014).

## B. *Analysis*

Mr. Guzman did not meet his burden to establish standing. We assume that Mr. Guzman had a subjective expectation of privacy in the trailer based on Mr. Cannon's permission. But considering his own testimony that he read the posted signs informing him it was unlawful to reside on the property, we conclude society would not accept his subjective expectation as reasonable.

Overnight guests ordinarily enjoy an objectively reasonable expectation of privacy. *See Olson*, 495 U.S. at 98 (stating this is based on "expectations of privacy that we all share" in the "longstanding social custom" of staying as a guest in a host's home). But Mr. Guzman's situation was not ordinary. He was staying on a property where the City had posted notices on the buildings expressly prohibiting any person from residing in the structure or on the premises. The notices stated:

- "No person shall reside in this structure or on this property";

- "No person shall . . . remain on this property past daylight hours"; and

- Occupancy of the property was permitted only "<u>during daylight hours</u>" and solely for "repairing, securing, or cleaning this property."

11

ROA, Vol. I at 34 (capitalization omitted).[8]

Mr. Guzman testified that he had been living in the trailer since early September, thus violating all three of the notices' prohibitions. He argues Mr. Cannon's permission nonetheless made his subjective expectation of privacy objectively reasonable. But under "all of the facts and circumstances"—in particular, the posted notices' express prohibition on anyone residing on the property—his expectation was not objectively reasonable. *Carr*, 939 F.2d at 1445; *Byrd*, 584 U.S. at 409 ("[W]rongful presence at the scene of a search would not enable a defendant to object to the legality of the search." (quotations omitted)).[9]

---

[8] We confine our objective reasonableness analysis to what Mr. Guzman was aware of when he formed his expectation. *See, e.g.*, *United States v. Creighton*, 639 F.3d 1281, 1287-88 (10th Cir. 2011) (holding an invited guest of a registered hotel occupant did not have an objectively reasonable privacy expectation because evidence undermined the defendant's "claim that he never received reasonable notice" that his host failed to pay the hotel bill); *Cross v. Mokwa*, 547 F.3d 890, 902 (8th Cir. 2008) (Bye, J., concurring in part) (finding that guests unknowingly staying in a condemned building had a reasonable expectation of privacy, unlike the owner who knew occupancy was unlawful); *Walter v. United States*, 447 U.S. 649, 658-59 (1980) (finding defendant had a reasonable expectation of privacy in packages that were fully wrapped when they left his possession, since "petitioners expected no one except the intended recipient" to open the packages and "[t]he fact that the cartons were unexpectedly opened by a third party . . . does not alter the consignor's legitimate expectation of privacy"). We do not impute knowledge of the Code to Mr. Guzman but ask only whether the posted notices reasonably notified him that residing on the property was wrongful.

[9] For the first time on appeal, Mr. Guzman argues the City lacks the authority to exclude property owners and their invitees from property containing substandard buildings. *See* Aplt. Br. at 20-22. He waived this argument because he did not raise it in his suppression motion and does not attempt to show good cause for failing to do so. *See* Fed. R. Crim. P. 12(c)(3). Federal Rule of Criminal Procedure 12(c)(3) and his plea agreement thus bar him from raising it here. *United States v. Warwick*, 928 F.3d 939, 944 (10th Cir. 2019) ("[W]e are required under Federal Rule of Criminal

12

Mr. Guzman argues the signs did not pertain to the trailer because they were posted only on the buildings, not on the lot or the trailer itself.  *See* Aplt. Br. at 19-20.  But the instructions on the notices were not limited to the specific structures—they expressly prohibited residing on or remaining "on this property" past daylight hours.  ROA, Vol. I at 34.  Mr. Guzman testified he had read these notices, including the provisions barring residence and limiting occupation of the property.  This testimony undermines any claim he did not know he was unlawfully residing on the property.  *See Creighton*, 639 F.3d at 1287-88.  As the district court found, these notices sufficiently notified him that residing on the property was wrongful.  He thus lacked a reasonable expectation of privacy and in turn lacked standing to challenge the search of the trailer.[10]

---

Procedure 12[(c)(3)] to decline review of any argument not made in a motion to suppress evidence and raised for the first time on appeal, unless good cause can be shown."); *United States v. Burke*, 633 F.3d 984, 987 (10th Cir. 2011) ("[T]his waiver provision applies . . . also to the failure to include a particular argument in the motion." (quotations omitted)); *see* ROA, Vol. I at 90-91 (reserving Mr. Guzman's right to appeal denial of his suppression motion "on any grounds argued by the Defendant in district court").

[10] In addition to his expectation-of-privacy argument, Mr. Guzman suggests he has standing based on a property interest in the trailer, but this argument fails under the Code.  It provides that when, as here, an owner fails to commence repairs on substandard buildings within 30 days, no person is allowed "on the property without the written permission from the Department or and [sic] with the permission on them at all times while on the property."  Albuquerque, N.M., Unif. Hous. Code § 14-3-5-6(A)(3)(b).  It is a misdemeanor to violate the code or the Department's orders.  *Id.* § 14-3-5-99.  *Id.* § 14-3-5-99 (stating it is a misdemeanor to violate any of the code's provisions or to fail to comply with the Department's orders).  Neither Mr. Cannon nor Mr. Guzman sought the Department's written permission to be on the property.  Mr. Guzman therefore had no legitimate property

## III. **CONCLUSION**

We affirm.

---

interest in or lawful possession of the trailer, and had no right to exclude others. *See United States v. Arango*, 912 F.2d 441, 445 (10th Cir. 1990).