*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0089p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 03-4314

TERRENCE C. MAY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 02-00091—Peter C. Economus, District Judge.

Argued: October 27, 2004

Decided and Filed: February 23, 2005

Before: BOGGS, Chief Judge; GILMAN, Circuit Judge; SARGUS, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Paul F. Adamson, BURDON & MERLITTI, Akron, Ohio, for Appellant. Thomas M. Bauer, ASSISTANT UNITED STATES ATTORNEY, Akron, Ohio, for Appellee. **ON BRIEF:** Paul F. Adamson, BURDON & MERLITTI, Akron, Ohio, for Appellant. Thomas M. Bauer, ASSISTANT UNITED STATES ATTORNEY, Akron, Ohio, for Appellee.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge. Terrence May was arrested when law enforcement agents raided his home and seized 250 grams of crack cocaine. After the district court denied his motion to suppress the evidence, May entered a conditional guilty plea to the charge of possession of cocaine base (crack) with the intent to distribute. He was sentenced to 120 months in prison, placed on five years of supervised release, and required to pay a $2,000 fine. On appeal, May contends that the district court erred in denying his motion to suppress because the affidavit underlying the search warrant for his home was insufficient to support a finding of probable cause, and because the officers executing the search warrant failed to obey the "knock and announce" rule. He also challenges the district court's refusal to grant a downward departure after alleged

---

[*]The Honorable Edmund A. Sargus, United States District Judge for the Southern District of Ohio, sitting by designation.

"sentencing entrapment" by the government. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

In January of 2002, Officer Jeffrey Allen received information from Benji Brown, a confidential informant, that May possessed a large amount of powder cocaine. Brown reported that he had been contacted by May for the purpose of coming to May's residence to "cook" the powder cocaine into crack. May had presumably called Brown because Brown was well known in local drug-trafficking circles as a person skilled in cooking powder cocaine into crack, a form of cocaine with a much higher street value. In the six months prior to his tip regarding May's alleged involvement in illegal drug activity, Brown had been providing reliable drug-related information to law enforcement authorities.

The day after learning from Brown that May was allegedly in possession of a large amount of powder cocaine, Officer Allen and FBI Special Agent James McCann met with Brown. They searched him and his vehicle, placed a body recorder on him, gave him a cellular telephone, outfitted him with crack-cooking utensils, and then followed him as he drove to May's residence. After watching Brown pull into the driveway and enter the house, Officer Allen and Agent McCann left May's residence to prepare an affidavit in support of a search warrant. Before completing the affidavit, Officer Allen called Brown on the cellular telephone and learned, through a coded conversation, that he was engaged in cooking approximately nine ounces of cocaine for May. Officer Allen then provided an Ohio Common Pleas judge with a sworn affidavit that identified the residence to be searched, detailed May's physical appearance and criminal history, and described the suspected criminal activity as follows:

> On August 16, 1999, the structure at 130 E. Warren Ave., Youngstown, Ohio was searched in an effort to locate and arrest Terrence C. May. A consent to search the premises was obtained and three weapons and suspected marijuana were seized.

> On or about January 31, 2002, a cooperating source advised that Terrence May was obtaining a large amount of powder cocaine from an unknown location. The cooperating source stated that Terrence May would have the cocaine cooked into crack cocaine at 130 E. Warren Ave. utilizing Benji Brown to cook the cocaine. The Affiant knows Brown to be involved in drug-related activity based on unrelated drug investigations.

> On February 1, 2002, a cooperating source advised that Terrence May was currently present at 130 E. Warren Ave., Youngstown, Ohio with Benji Brown and are in the process of cooking powder cocaine into crack cocaine. Task Force officers conducting surveillance of 130 E. Warren Ave. showed Benji Brown entering 130 E. Warren Ave., Youngstown Ohio.

> Officers of the Mahoning Valley Drug Task Force (MVDTF) and [Officer Allen] have received information concerning TERRENCE C. MAY and the aforesaid illegal narcotics business from a cooperating source. [Officer Allen] believes the cooperating source's information to be reliable because the source has furnished information to the MVDTF and [Officer Allen] for a period of six months and has worked with [Officer Allen] in the investigation of this matter. The information and assistance provided by the cooperating source has been corroborated by independent investigation by the MVDTF and [Officer Allen]. The cooperating source has provided assistance in unrelated drug investigation cases. For the reasons stated, [Officer Allen] believes the cooperating source to be reliable.

The "cooperating source" referenced in the affidavit was actually Brown, although he was not identified in the affidavit as such in order to protect his identity as the informant. Officer Allen testified that he disclosed this information to the issuing judge, but he was not under oath at the time, and the district court declined to consider the testimony.

As soon as the judge issued the search warrant, Agent McCann called the entry team, which was positioned in an unmarked van outside of May's residence, and ordered them to execute the warrant. The leader of the team, Officer Steven Woodberry, testified that the police officers exited the van, approached the house yelling "police department, search warrant," knocked at least two times, and then waited for at least 15 seconds before forcing the door open with a battering ram. Officer Allen and Agent McCann arrived back on the scene a few minutes later and seized 10 to 12 ounces of crack cocaine and a .38-caliber revolver from May's residence. May was arrested and later indicted on one count of possessing approximately 250 grams of crack cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). This timely appeal followed.

## II. ANALYSIS

### A.     The affidavit was sufficient to establish probable cause for the warrant

"This Court reviews a district court's decision on a motion to suppress evidence under two complementary standards." *United States v. Miller*, 314 F.3d 265, 267 (6th Cir. 2002). The district court's factual findings are upheld unless they are clearly erroneous, but its "legal conclusions as to the existence of probable cause are reviewed de novo." *United States v. Combs*, 369 F.3d 925, 937 (6th Cir. 2004). In reviewing the district court's determination that an affidavit was sufficient to support the issuance of a search warrant, however, this court is required to give "great deference" to the issuing judge's findings of probable cause. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc).

A court must look to the "totality of the circumstances," including a confidential informant's "veracity, reliability, and basis of knowledge," in order to answer "the commonsense, practical question" of whether an affidavit is sufficient to support a finding of probable cause. *Illinois v. Gates*, 462 U.S. 213, 230 (1983) (quotation marks omitted). This court has declared that an affidavit is sufficient "where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, [such that] a neutral and detached magistrate *may* believe that evidence of a crime will be found." *Allen*, 211 F.3d at 976 (emphasis in original).

On appeal, May contends that Officer Allen's affidavit was insufficient for the following three reasons: (1) nowhere does the affidavit state that the issuing judge was told the name of the cooperating source, (2) the affidavit contains no corroboration for the cooperating source's statements other than his own presence at the scene, and (3) nowhere does the affidavit state that the cooperating source had provided reliable information in the past with regard to drug activity. We will address each of these arguments in turn.

#### 1.     *The identity of the cooperating source was not disclosed to the judge*

An informant's tip is considered to have greater reliability, and therefore to be more supportive of a finding of probable cause, if the affidavit avers that the name of the confidential informant has been disclosed to the issuing judge. *See United States v. Helton*, 314 F.3d 812, 820 (6th Cir. 2003) ("Anonymous tips . . . demand more stringent scrutiny of their veracity, reliability, and basis of knowledge than reports from confidential informants."). This is so largely because the informant's recitation to the police, "if fabricated[,] would subject him to criminal liability." *Gates*, 462 U.S. at 233.

In order for a confidential informant to be deemed "known," however, the affidavit must acknowledge that the police know the informant's identity or that the identity has been disclosed under oath to the issuing judge. *See Whiteley v. Warden*, 401 U.S. 560, 565 n.8 (1971) (stating that "an otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate"); *Aguilar v. Texas*, 378 U.S. 108, 109 n.1 (1964) ("It is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention.") (emphasis in original).

The affidavit in the present case does not reveal that Brown was in fact the "cooperating source." And although Officer Allen maintains that he informed the judge of this fact, he was not under oath at the time. *See Tabasko v. Barton*, 472 F.2d 871, 874 (6th Cir. 1972) (refusing to consider a police officer's unsworn statements to the magistrate in determining whether probable cause existed). Relying upon *United States v. Williams*, 224 F.3d 530 (6th Cir. 2000), May argues that Officer Allen's affidavit was insufficient to support a finding of probable cause because the statements of the unidentified informant were not independently corroborated by the police. In *Williams*, this court found an affidavit sufficient where the statements of a confidential source, unnamed to the judge but known to the police, were corroborated by police surveillance. *Id.* at 533. May misreads *Williams*, however, when he argues that the case stands for the proposition that an unidentified confidential informant's statements need *always* be corroborated by an independent police investigation. *See Allen*, 211 F.3d at 976 (requiring independent corroboration only if there is an "absence of any indicia of the informants' reliability").

After determining that the act of naming an otherwise confidential informant was a "minimal requirement" of "great import" for the purpose of establishing probable cause under *Allen,* the district court concluded that Officer Allen had failed to identify his confidential informant. *See Williams*, 224 F.3d at 532 (finding a "significant difference . . . that in *Allen*, the name of the informant was disclosed to the judge"). The district court further concluded that this failure rendered the search warrant for May's residence "void of probable cause in the absence of further independent corroboration."

We respectfully disagree with this aspect of the district court's analysis. The failure to identify the informant to the issuing magistrate is not the failure of a "minimal requirement," nor does it make the search warrant presumptively void. Rather, it is but one "relevant consideration[] in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations . . . ." *Gates*, 462 U.S. at 233 (observing that "a deficiency in one [element] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability"). Thus, in the case before us, the search warrant for May's residence will be deemed to be supported by probable cause if the government established that the issuing judge had before him "additional evidence [that] buttressed the informant's information." *Williams*, 224 F.3d at 532-33 (upholding a search warrant where "the informant was not identified" because "additional information . . . corroborates the informer's information sufficiently to find probable cause").

The additional evidence substantiating an informant's reliability need not be obtained from a source unrelated to the confidential informant—e.g., an independent police investigation or a second confidential informant—but may be any set of facts that support the accuracy of the information supplied by the informant. *See Jones v. United States*, 362 U.S. 257, 271-72 (1960) (rejecting the defendant's argument "that the warrant was defective because [the officer's] informants were not produced, because his affidavit did not even state their names, and [the officer] did not undertake . . . his own independent investigation of the claims made by his informants," where the court found that "there was a substantial basis for crediting the hearsay" because the affidavit stated  that the unnamed confidential informants "had previously given accurate

information . . . and because this same information is given by other sources"). So long as an issuing judge is "informed of some of the underlying circumstances . . . from which the officer concluded that the informant, whose identity need not be disclosed, was credible, or his information reliable," an affidavit is sufficient to support a finding of probable cause. *Aguilar v. Texas*, 378 U.S. 108, 114 (1964) (citation and quotation marks omitted).

Turning now to the present case, we conclude that there was substantial information in the affidavit upon which the issuing judge could rest his finding of probable cause. Here, the issuing judge knew that the confidential informant's identity was known to the police because Officer Allen stated in his affidavit that the confidential "source has furnished information . . . for a period of six months and has worked with [Officer Allen] in the investigation of this matter . . . [and] has provided assistance in unrelated drug investigation cases." *See United States v. Harris*, 403 U.S. 573, 584-85 (1971) (finding not "especially significant that neither the name nor the person of the informant was produced before the magistrate. The police themselves almost certainly knew his name . . . ."). The statements of an informant such as Brown, whose identity was known to the police and who would be subject to prosecution for making a false report, are thus entitled to far greater weight than those of an anonymous source.

So even though the identity of the confidential informant was not disclosed by Officer Allen in his affidavit or under oath—leading the district court to correctly conclude that "Officer Allen failed to 'name' Benji Brown to the common pleas judge"—this does not compel the conclusion advanced by May that Officer Allen's confidential informant was an "anonymous source" whose statements required independent corroboration. The situation here is far different than in *Gates*, 462 U.S. at 241, which emphasized the "value of corroboration of details of an informant's tip by independent police work" where the affidavit recounted statements contained in an *anonymous letter* mailed to the police. A person known to the affiant officer, even though not named in the affidavit, is not "an anonymous informant" in the sense referred to in cases where the identity of the informant is known to no one.

**2.     *There was sufficient corroboration for the cooperating source's statements to support a finding of probable cause***

Officer Allen's affidavit contained independent corroboration for the statements of the confidential informant, who had said that "May would have the cocaine cooked into crack cocaine at 130 E. Warren Ave. utilizing Benji Brown to cook the cocaine." This tip was substantiated by the affidavit's averment that "Task Force officers conducting surveillance of 130 E. Warren Ave. showed Benji Brown entering [May's residence at] 130 E. Warren Ave." The affidavit further states that Officer Allen "knows Brown to be involved in drug-related activity based on unrelated drug investigations."

May contends, however, that the officers witnessing Brown enter May's house did not constitute independent corroboration because it was Brown, as the confidential informant, who had declared that this event would occur in the first place. But May, in advancing this argument, overlooks Officer Allen's averment that he "knows Brown to be involved in drug-related activity based on unrelated drug investigations." The fact that a prominent figure in the local drug scene was seen entering May's home would constitute independent corroboration even in the absence of a prediction to that effect by a confidential informant. Such an observation is far more inculpatory than the "entirely innocent activity" found to be sufficient "corroboration of the letter's predictions" in *Gates*. 462 U.S. at 243-44 n.13 (finding that "seemingly innocent activity became suspicious in light of the initial tip[,]" thus corroborating statements in the anonymous letter) (quotation marks omitted).

Officer Allen also stated in the affidavit that an earlier search of 130 E. Warren Ave., conducted two-and-half years before in an effort to locate and arrest May, had yielded marijuana and weapons. This previous discovery gave additional reason to believe that the visit by Brown, a known figure in drug-trafficking circles, was not a purely social call. After aggregating all of this independent corroboration and applying the totality-of-the-circumstances test, we agree with the district court's conclusion that the information provided in Officer Allen's affidavit was sufficient to support a finding of probable cause for the search warrant in question.

### 3.        *The affidavit states that the cooperating source had provided reliable information in the past*

May insists, however, that the affidavit is insufficient because nowhere in it "does Officer Allen aver that Benji Brown had provided reliable information in the past related in any way to drug investigations." This is literally true, because nowhere in the affidavit does Officer Allen identify Brown as the informant who provided the information to the law enforcement officers. If he had, of course, there would be no issue whatsoever with respect to whether the confidential informant was properly "named" to the issuing judge.

May's real objection appears to be that the affidavit fails to provide any details upon which the issuing judge could reasonably rely in determining that the confidential informant had proven reliable in the past. But this contention is directly refuted by the affidavit itself, wherein Officer Allen states that the "cooperating source has provided assistance in unrelated drug investigation cases." The affidavit need not include a detailed factual basis for Officer Allen's statement in order to support the judge's finding of probable cause. *See United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001) ("Sixth Circuit precedent clearly establishes that the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable."). May's contention on this point is therefore without merit.

**B**.       **Even if the affidavit were to be deemed insufficient to provide probable cause, the officers relied upon it in good faith in executing the search warrant**

Where law enforcement officers reasonably rely in good faith upon a defective search warrant, the evidence obtained in the ensuing search need not be suppressed. *United States v. Leon*, 468 U.S. 897, 923 (1984) (holding that the proper test of an officer's good faith is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization"). The *Leon* good faith exception to the warrant requirement will not apply, however, where an affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (quoting *Brown v. Illinois*, 422 U.S. 590, 611 (1975) (Powell, J. concurring in part)).

In the present case, Officer Allen presented a neutral judicial officer with an affidavit stating that he had information about the presence of illegal drugs at a specific location, based on the recent, personal observation of a reliable informant. The affidavit in this case, even if deemed to be insufficient to establish probable cause, was sufficient to fit within the good faith exception of *Leon*. *See United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004) (stating that "the 'so lacking in indicia' test is less demanding than the 'substantial basis' test. Thus, it is entirely possible that an affidavit could be insufficient for probable cause but sufficient for 'good faith' reliance.").

**C.    The district court did not err in concluding that the officers executing the search warrant obeyed the "knock and announce" rule**

May also asserts that the district court erred in denying his motion to suppress because his Fourth Amendment rights were violated when the officers executing the search warrant failed to knock and announce their presence before forcibly entering his home. Absent exigent circumstances, the Fourth Amendment requires that law enforcement officers knock and announce their presence before entering a residence to execute a search warrant. *United States v. Bates*, 84 F.3d 790, 794 (6th Cir. 1996). Because no exigent circumstances are alleged to have existed in the present case, May's motion to suppress must be granted if the entry team failed to knock and announce their presence before using a battering ram to gain entry to his home.

Officer Woodberry, the leader of the entry team that executed the search warrant, testified that he announced his presence, knocked, and waited 15 to 30 seconds before forcing the door open. May presented two witnesses who provided contrary testimony. One was his cousin who was inside the house with him, and the other was a neighbor who lived across the street. Both supported May's argument that the officers did not knock and announce their presence before ramming open the door. After hearing the conflicting testimony and observing the witnesses' demeanor, the district court found "that the law enforcement officials announced their presence, knocked, waited a period of time, and then forcibly entered the residence."

We will not disturb the district court's factual findings with respect to whether the entry team obeyed the knock-and-announce rule unless the findings are clearly erroneous, giving "due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas v. United States*, 517 U.S. 690, 699 (1996). May's bald assertion that "no one who has been involved in criminal law for any length of time should believe [Officer Woodberry's] statements" is insufficient to compel a finding that the district court was clearly erroneous in determining that the entry-team officers obeyed the knock-and-announce rule.

**D.    The district court did not err in refusing to grant a downward adjustment to May's sentence on account of alleged "sentencing entrapment"**

Finally, May challenges the district court's failure to grant his request for a downward departure in the face of alleged "sentencing entrapment" by the government. He claims that Officer Allen and Agent McCann provided cooking utensils to Brown, sent him into May's residence with instructions to cook the powder cocaine, and then waited a sufficient period of time to ensure that the crack had been produced. The result was that May became eligible for a prison sentence that was nearly three times longer than that available for possession of powder cocaine alone.

In citing precedent from three of our sister circuits, May urges us to recognize, as a matter of Sixth Circuit law, that a claim of sentencing entrapment by a defendant may compel a downward departure from the Sentencing Guidelines. "As a general rule, a district court's refusal to grant a downward departure . . . is unreviewable on appeal unless the district court (1) improperly computed the guideline range; (2) was unaware of its discretion to depart downward from the guideline range; or (3) imposed the sentence in violation of law or as a result of the incorrect application of the Sentencing Guidelines." *United States v. Cooper*, 348 F.3d 493, 495 (6th Cir. 2003).

May has not alleged that any of the above exceptions exist, but his request for a recognition by this court of a sentencing-entrapment defense could be construed as inferring that the district court was unaware of this potential ground for a downward departure. The record fails to bear this out, however, because the district court heard and ruled against May on his sentencing-entrapment claim, finding that "the evidence presented to the Court strongly supports the conclusion that the defendant's will was not overcome." "Under these circumstances, we must conclude that the district

court was aware of its discretion to grant a downward departure . . . but determined that the facts of the case did not justify such a departure. Therefore, the district court's refusal to grant the downward departure is unreviewable on appeal." *Id.* at 495-96.

Even if we were to find that appellate review of May's request for a downward departure was appropriate, we would resist May's invitation in the present case to weigh in on whether a defense of sentencing entrapment is available in the Sixth Circuit. As the district court concluded below, the facts in this case simply do not support May's claim that he was entrapped into cooking the powder cocaine into crack. May, in fact, does not dispute that he was the one who contacted Brown and asked him to cook the powder cocaine. Similarly, Officer Allen and Agent McCann waited only a matter of minutes after observing Brown enter May's residence before leaving to secure a search warrant. As soon as the search warrant was issued, the officers used a cellular telephone to order the entry team to execute the warrant. We therefore find no factual basis in this case to support May's claim of sentencing entrapment.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.