**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0763n.06
Filed: October 26, 2007

No. 06-6500

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| BARRY FERGUSON, | ) | |
| | ) | **O P I N I O N** |
| **Defendant-Appellant.** | ) | |
| | ) | |

**Before:  MOORE and GRIFFIN, Circuit Judges; and TARNOW,[*] District Judge.**

**KAREN NELSON MOORE, Circuit Judge.**  The defendant asks this court to reverse his criminal conviction on the grounds that the district court did not exclude evidence seized after a knock-and-announce violation, that the chancellor lacked probable cause to issue a warrant because the affiant did not adequately corroborate the tip of his confidential informant, and that the district court judge impermissibly limited the questioning of the affiant.  We find all of these claims to be without merit and AFFIRM the district court's judgment.

**I.  BACKGROUND**

In April 2004, Robert Harrison, a five-year veteran of the West Tennessee Violent Crime and Drug Task Force, interviewed a confidential informant ("CI") who had previously provided Harrison with information leading to five felony convictions of drug traffickers, five seizures of cocaine, and one seizure of marijuana.  On this occasion, the CI provided several pieces of information to Harrison about an alleged

---

[*]The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

drug trafficker, Barry Ferguson. The tip included the following information: (1) that Ferguson went by the alias "Slow"; (2) that Ferguson had a prior conviction for a drug offense; (3) that Ferguson used a green, boxy Chevrolet or Buick in his drug trafficking; and (4) the location of Ferguson's residence. Joint Appendix ("J.A.") at 46 (Aff. for Warrant ¶ 6, 8, 9). The CI also told Harrison that he had witnessed Ferguson sell cocaine from the residence within the last five days. Harrison independently confirmed that Ferguson used the alias "Slow," that Ferguson had a prior drug conviction, and that Ferguson paid the utility bills at the alleged residence.

On April 23, 2004, Harrison applied for and received a warrant to search for cocaine and other drug paraphernalia at Ferguson's residence. That afternoon, Harrison and others on the West Tennessee Violent Crime and Drug Task Force executed the warrant. During the search, the agents seized cocaine, marijuana, and 10.8 grams of crack cocaine. Several drug-trade items were also seized. Ferguson was arrested and charged with possession with intent to distribute approximately 140 grams of cocaine, more than five grams of crack cocaine, and approximately two pounds of marijuana.

Prior to trial, Ferguson filed a motion to suppress the evidence seized in the search of his residence on the grounds that the officers failed to "knock and announce" prior to entering. J.A. at 31-35 (Mot. to Suppress). At the hearing on the motion, the United States called Donald Blackwell, who was an experienced narcotics investigator and one of the officers who executed the warrant. Blackwell testified that the officers did knock and announce their presence; Blackwell stated: "I went up onto the door, I knocked on the door and announced, 'Police, search warrant,' repeatedly." J.A. at 87 (Suppression Hr'g Tr. of Mar. 23, 2005, Blackwell Test. at 16:10-11). Blackwell testified that after knocking he heard a voice say "I'm coming." The first time the voice was closer to the door, but as the police kept knocking, they heard the same voice say "I'm coming" a second time from further away. J.A. at 87 (Suppression Hr'g Tr. of Mar. 23, 2005, Blackwell Test. at 16:16-22).

2

Harrison was also standing at the door. Using his watch, he kept track of the time that elapsed between the initial knock and when the officers made entry to the residence. Harrison testified that more than twenty-five seconds passed before he gave the order to breach the door.

In response to the testimony by the officers, Ferguson presented testimony by three witnesses. The first was Edward Harvey, Ferguson's neighbor, who at the time of the search was about one hundred yards from Ferguson's house. Harvey's testimony did not contradict the police testimony, because he observed the police arrive and saw them kick the door in about one minute later.

Ferguson next called Jerry Phelps, Ferguson's neighbor and friend. Although Phelps testified that he was only twenty to thirty yards from Ferguson's house, the police estimated that the distance was approximately 125 to 150 yards. Phelps testified that, despite trees obscuring his view, he saw the police stop at the door for "[p]robably less than ten [seconds]," J.A. at 111 (Suppression Hr'g Tr. of Mar. 23, 2005, Phelps Test. at 40:15), and that the police did not say anything before entering the residence. Phelps admitted that at the time of the search he had been drinking for forty to forty-five minutes.

Ferguson also called Jesse Brown, Ferguson's cousin, who estimated that at the time of search he was about fifty yards from Ferguson's home. Although there were trees obstructing his view of Ferguson's house, Brown testified that he could hear the police yell after they entered the residence but did not mention whether he heard the police say anything before they entered. J.A. at 120 (Suppression Hr'g Tr. of Mar. 23, 2005, Brown Test. at 49:4-20). Although Brown did not see the officers enter Ferguson's home, he estimated that more than ten seconds passed between when the police arrived and when he heard the police kick in the door. By the time the search took place, Brown had consumed about six beers over a three- to four-hour period.

The district court concluded that the police knocked and announced in a way that comported with the dictates of the Fourth Amendment. As to the factual matter of whether the officers alerted Ferguson to their presence before entry, the district court believed that Ferguson's witnesses' testimony was

3

"somewhat suspect." J.A. at 142 (Tr. at 71:20-22). The district court found that Harvey's testimony did not contradict the police testimony and noted that Ferguson's other two witnesses were unsure of several factors, including the time the police arrived and their distance from Ferguson's home. The district court was also concerned that the witnesses' perceptions may have been influenced by alcohol. On balance, the district court credited the officers' testimony and concluded that a knock and announce did occur.

The district court next evaluated the reasonableness of the knock-and-announce procedure and concluded that it complied with the Fourth Amendment. Because the officers were searching for cocaine, a drug that traffickers can dispose of quickly, the district court believed that the officers did not need to wait very long before entering Ferguson's home. In addition, the officers "could certainly reasonably suspect . . . something was afoot" when they heard an occupant moving further from the door, not closer. J.A. at 146-47 (Tr. at 75:19-76:4). On those grounds, the district court denied the motion to suppress.

On October 24, 2005, Ferguson filed another suppression motion, this time alleging that the affidavit did not provide the issuing chancellor with the necessary probable cause. Ferguson claimed that the affidavit was uncorroborated and too general, but the district court found, when considering the totality of the affidavit, a mix of specific and general statements from a reliable CI. The district court concluded that this constituted a sufficient basis for the issuing chancellor's finding of probable cause.

On August 7, 2006, Ferguson pleaded guilty to possession with intent to distribute more than five grams of a cocaine base, i.e., crack cocaine. He was sentenced to sixty-three months of imprisonment and four years of supervised release. In accordance with his conditional guilty plea, Ferguson filed this timely appeal.

4

## II. MOTION TO SUPPRESS BASED ON THE KNOCK AND ANNOUNCE

### A. Standard of Review

"When reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law *de novo*." *United States v. Foster*, 376 F.3d 577, 583 (6th Cir.) (internal quotation marks omitted), *cert. denied*, 543 U.S. 1012 (2004). We review the evidence "in the light most likely to support the district court's decision." *Id.* (internal quotation marks omitted).

### B. The Exclusionary Rule

The idea that the police must announce their presence before entering a residence is a common-law principle "'embedded in Anglo-American law.'" *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995) (quoting *Miller v. United States*, 357 U.S. 301, 313 (1958)). The purposes of the knock-and-announce rule are to reduce the potential for violence, diminish the destruction of property, and serve as "a recognition of the individual's right to privacy in his [or her] house." *United States v. Bates*, 84 F.3d 790, 794 (6th Cir. 1996) (internal quotation marks omitted) (alteration in original).

The rule has found instantiation in American law through three means. First, the requirement that federal officers knock and announce before entering a house was codified in 1917. 18 U.S.C. §§ 618, 619, 40 Stat. 217, 229 (1917) (current version at 18 U.S.C. § 3109).[1] Second, some states have enshrined the restriction in state law. *See, e.g.*, OHIO REV. CODE ANN. § 2935.12; TENN. R. CRIM. P. 41(e)(2). Third, in 1995, knock and announce was given constitutional significance when the Supreme Court held that adherence to the knock-and-announce requirement is "an element of the reasonableness inquiry under the Fourth Amendment." *Wilson*, 514 U.S. at 934.

---

[1]The current version reads: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant." 18 U.S.C. § 3109.

Although each form of the rule – federal statutory, state statutory, and constitutional – share the same common-law foundation, they do not necessarily share a common remedy following a violation. *See United States v. Ramos*, 923 F.2d 1346, 1355 n.19 (9th Cir. 1991) ("It is by no means certain that the protections afforded suspects by section 3109 exactly parallel those assured by the fourth amendment."). For nearly half a century, the Supreme Court had recognized the exclusionary rule as the appropriate remedy following a violation of the federal statutory form of the knock-and-announce rule. *Miller*, 357 U.S. at 313-14 (holding that evidence should have been suppressed following a violation of § 3109). And we have followed that remedy. *United States v. Nabors*, 901 F.2d 1351, 1354 (6th Cir.) ("If evidence is procured in violation of § 3109, that evidence must be suppressed."), *cert. denied*, 498 U.S. 871 (1990). Some states, with their own knock-and-announce rule, have independently applied the exclusionary rule as the appropriate remedy. *See, e.g.*, TENN. R. CRIM. P. 41(g); *State v. Perry*, 178 S.W.3d 739, 745 (Tenn. Crim. App. 2005). But *Wilson*, despite bringing knock and announce into the domain of the Fourth Amendment, left open the question of the proper remedy for violations of the constitutional form of the rule. *See* Robin L. Gentry, Note, *Why Knock? The Door Will Inevitably Open: An Analysis of* People v. Stevens *and the Michigan Supreme Court's Departure From Fourth Amendment Protection*, 46 WAYNE L. REV. 1659, 1684-85 (2000) (speculating that the exclusionary rule would be the correct remedy, but acknowledging that the Supreme Court did not resolve the matter); Todd Witten, Note, Wilson v. Arkansas*: Thirty Years After* Ker *the Supreme Court Addresses the Knock and Announce Issue*, 29 AKRON L. REV. 447, 467 (1996) (noting the unresolved issue of "whether exclusion is a constitutionally compelled remedy" for violations of the knock-and-announce rule).

Recently, the Supreme Court, in *Hudson v. Michigan*, — U.S. —, 126 S. Ct. 2159 (2006), resolved this question and announced that the exclusionary rule was not an available remedy following a violation of the Fourth Amendment's knock-and-announce rule. In *Hudson*, the government conceded that the police failed to knock and announce. *Id.* at 2163. Despite the violation of the rule, the Court held that

6

exclusion of the drugs and firearms that the police found in the search was not the appropriate remedy. *Id.* at 2165.

While the Court was clear about the availability, or lack thereof, of the exclusionary rule for the Fourth Amendment variant of the knock-and-announce rule, the *Hudson* decision involved only a prosecution in state court and thus did not resolve the issue of the continuing viability of the exclusionary rule as a remedy for violations of 18 U.S.C. § 3109. There is room for disagreement regarding whether the exclusionary rule should remain available as a remedy for violations of § 3109. *Compare United States v. Bruno*, 487 F.3d 304, 306 (5th Cir.) (declaring the exclusionary rule inapplicable following a violation of § 3109), *cert. denied*, — S. Ct. —, 2007 WL 2401840 (Oct. 1, 2007); *United States v. Southerland*, 466 F.3d 1083, 1085-86 (D.C. Cir. 2006) (same and concluding that "§ 3109 and the Fourth Amendment have merged both in the standards governing entries into the home and in the remedy for violations of those standards"), *cert. denied*, 127 S. Ct. 1361 (2007), *with* Orin Kerr, Remedies for Knock-and-Announce Violations in Federal Court After *Hudson v. Michigan* (July 11, 2006), http://www.orinkerr.com/2006/07/11/remedies-for-knock-and-announce-violations-in-federal-court-after-hudson-v-michigan (arguing that § 3109's exclusionary remedy survives *Hudson*). Luckily, we need not wade into these murky waters, for we conclude for other reasons that *Hudson* governs our decision in the case at hand.

Section 3109, regardless of its concomitant remedy, does not apply to this case because § 3109 does not govern when there is "a state warrant executed by state law enforcement." *United States v. Pinson*, 321 F.3d 558, 565 n.2 (6th Cir.) (refusing to consider § 3109 when Nashville officers procured the warrant and conducted the search, even though the federal government prosecuted the case), *cert. denied*, 540 U.S. 912 (2003); *United States v. Gatewood*, 60 F.3d 248, 249 (6th Cir.) (holding § 3109 inapplicable to a search conducted by officers of a county sheriff's office because it "regulates only federal officers . . . and has no application when 'state officers, acting totally without federal involvement, seize

evidence that is later offered in a federal prosecution'" (quoting *United States v. Moore*, 956 F.2d 843, 847 (8th Cir. 1992))), *cert. denied*, 516 U.S. 1001 (1995). Thus, Ferguson had three variations of the knock-and-announce rule upon which he could rely: state, federal, and constitutional. At no point has he asserted an argument under Tennessee law, so we need not consider its applicability. The federal variant is inapplicable to Ferguson's case because state officers procured the warrant and conducted the search of Ferguson's home.[2] Therefore, Ferguson could claim only a constitutional knock-and-announce defense, which is governed by *Hudson*.[3]

Because *Hudson* controls this case, we cannot conclude that the district court erred by denying the motion to suppress on the basis of a knock-and-announce violation; the exclusion of evidence was not an available remedy. *See United States v. White*, No. 05-6737, 2007 WL 1217960, at *2 (6th Cir. Apr. 25, 2007) (unpublished) ("However, defendant overlooks the fact that although the conviction in this case was obtained in federal court, the officers executing the search warrant were city policemen, not federal

---

[2]According to the record, the federal government was involved with Ferguson's case at some point after the search took place. *See* J.A. at 76-77 (Tr. at 5:24-6:24). However, Ferguson has never challenged the government's assertion at the suppression hearing that the federal involvement came only after the search. *See* J.A. at 77 (*id.* at 6:11-15) (responding to the government's claim that federal officers had nothing to do with the warrant or the search, Ferguson's attorney stated "I was not aware that the feds weren't involved until only on the back end. And I'm certainly not disputing what has been proffered to the court. I'll accept it as fact. You know, I don't dispute that"). The defendant bears the initial burden of establishing a prima facie violation of § 3109, *United States v. Murrie*, 534 F.2d 695, 697-98 (6th Cir. 1976), but in this case, Ferguson has not asserted that federal officers were involved in a manner that would trigger § 3109. Therefore, we hold that § 3109 is inapplicable to the case at bar without deciding the extent of interaction between state and federal officers that would trigger § 3109.

[3]*Hudson* was decided on June 15, 2006, and governs this direct appeal. *See United States v. Johnson*, 457 U.S. 537, 562 (1982) (holding that, subject to narrow exceptions, "a decision of this Court construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered"); *see also Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) (applying a decision to all cases "pending on direct review or not yet final" even if the decision represents a "clear break" with the past).

8

officers. . . . The situation here thus falls under the rule in *Hudson*, and the exclusionary rule does not apply.").

Because we conclude that *Hudson* applies to bar the suppression of evidence in this case, we need not address the district court's factual determination that the officers did knock and announce, or the reasonableness of the procedure that the officers used.

### III. MOTION TO SUPPRESS BASED ON PROBABLE CAUSE

**A. Standard of Review**

Once again, "we review the district court's findings of fact for clear error and its conclusions of law *de novo*." *Foster*, 376 F.3d at 583 (internal quotation marks omitted). However, when considering the issuing magistrate's actions, we have observed that "[t]he standard of review for determining the sufficiency of the affidavit 'is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.' We do not engage in *de novo* review of the affidavit, but '[r]ather the magistrate's probable cause determination should be afforded great deference.'" *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)). "This circuit has long held that an issuing magistrate's discretion should only be reversed if it was arbitrarily exercised." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir.) (en banc), *cert. denied*, 531 U.S. 907 (2000). When evaluating the sufficiency of the affidavit under this deferential standard, the affidavit must be considered as a whole; "'line-by-line scrutiny [of an underlying affidavit is] . . . inappropriate in reviewing [a] magistrate['s] decisions.'" *Id.* at 973 (alterations and omission in original) (quoting *Illinois v. Gates*, 462 U.S. 213, 246 n.14 (1983)).

**B. The Reliability of a Confidential Informant**

Our cases have identified three categories of informants: (1) named informants; (2) confidential informants, who are known to the affiant but not to the magistrate; and (3) anonymous informants, who

are known to no one but the informant. Whereas naming an informant is often, but not always, an indicator of reliability, 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 3.3(c) at 136 (4th ed. 2004), the police must find other ways to bolster the tips of the other, confidential or anonymous, informants. For instance, we demand consideration of an informant's "veracity, reliability, and 'basis of knowledge'" when dealing with a confidential informant, as we are in this case. *Rodriguez-Suazo*, 346 F.3d at 646 (quoting *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999)). These factors are not evaluated independently; rather, the presence of more of one factor makes the others less important. For instance, the more reliable the informant, the less detail the informant must provide in his tips before a magistrate can find probable cause. *See Gates*, 462 U.S. at 233.

In its brief, the government leans heavily upon *Allen*. We conclude, however, that *Allen* is inapposite, because although *Allen* suggested that a magistrate may find probable cause where an affiant simply attests to the reliability of the informant, *Allen* involved a named informant, not a confidential informant. *Allen*, 211 F.3d at 976. Our post-*Allen* confidential informant cases, in contrast, have continued our pre-*Allen* approach of demanding that an affidavit demonstrate more than simply blind faith in the words of an affiant who claims his unnamed informant is reliable. For example, in *Rodriguez-Suazo*, even though the officer's confidential informant had provided prior tips that resulted in over three arrests and convictions, the police still conducted some (albeit minimal) corroboration of the tip in question. 346 F.3d at 646-47. Similarly, in *United States v. May*, 399 F.3d 817 (6th Cir. 2005), we held that the tip of an unnamed confidential informant can support a finding of probable cause when "the issuing judge had before him 'additional evidence [that] buttressed the informant's information.'" 399 F.3d at 824 (quoting *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000)). One piece of additional evidence that the *May* court considered was that the informant had provided reliable information in the past, but we also considered the independent corroboration by the police. *See also United States v. Williams*, 224 F.3d 530, 532-33 (6th Cir. 2000) (finding probable cause from an affidavit that relied on

a confidential informant who had previously provided information leading to arrests and convictions, but where the affiant also mentioned his own personal knowledge regarding the sale of drugs at the location to be searched and the affiant separately informed the issuing judge about police surveillance of the residence), *cert. denied*, 531 U.S. 1095 (2001).

Applying this precedent, we conclude that the issuing chancellor had a substantial basis to conclude that there was probable cause to believe that a search of Ferguson's residence would yield evidence of criminal conduct. Officer Harrison did not name his confidential informant for the chancellor; thus, in evaluating the reliability of the tip and the existence of probable cause, the chancellor required additional bolstering information. In this case, the officer attested to the confidential informant's prior successful assistance five previous times and also discussed his own efforts at corroborating elements of the confidential informant's tip. These two factors combine to provide a substantial basis for the issuing chancellor's probable-cause determination.[4]

## C. The Generality of the Confidential Informant's Tip

Additionally, Ferguson urges this court to overturn the district court's denial of the motion to suppress because the confidential informant "only gave general information, not explicit and detailed information of any wrongdoing." Appellant Br. at 7. In particular, the Appellant suggests that there can be no probable cause when the informant does not provide specific dates of sales, the names of buyers, the location of the drugs, or specific details about the home or car mentioned in the tip. *Id.*

---

[4]Because the confidential informant in this case had provided a significant level of prior and accurate assistance in the past, we need not consider the concern that Officer Harrison corroborated only innocent facts. *See* LaFave, § 3.3(f) at 189 ("[A] lesser quantum of corroboration may be legitimately relied upon in combination with other circumstances tending to show veracity even if no one of them alone would suffice."). Had the confidential informant not had a track-record of veracity and reliability, we would be required to resolve at what point the "corroboration of a very few nonsuspicious and easily predictable events should not suffice." *Id.* at 187-88.

11

Although an affidavit "'must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant,'" *United States v. Gardiner*, 463 F.3d 445, 470 (6th Cir. 2006) (quoting *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996)), we have never required the level of detail that Ferguson demands. The *Allen* court, for example, upheld a finding of probable cause when the informant claimed there were drugs at a named location and that the informant had personally observed the drugs within seventy-two hours of the tip. *Allen*, 211 F.3d at 971-72. The informant's tip in *Allen*, similar to Harrison's informant's tip, lacked many specifics; the warrant was not specific as to the amount of cocaine and there was no explanation of how the informant was able to identify the powder as cocaine. *Id.* at 975; *see also Rodriguez-Suazo*, 346 F.3d at 647 (upholding a finding of probable cause where the informant did not offer details on prior drug sales he supposedly witnessed, but did note that he had witnessed the suspect in a drug sale within the last forty-eight hours); *Williams*, 224 F.3d at 531-33 (upholding a finding of probable cause where the informant stated only that he had observed the suspect in possession of cocaine at the residence in the last seventy-two hours).

Our evaluation of the specificity of an informant's tip is not an independent consideration; the level of generality is but one factor that the issuing magistrate must consider in the probable-cause determination that we have already discussed here. We conclude that in this case, although the confidential informant did not provide certain specifics, he did claim to have seen a drug sale within five days of his tip, and this level of generality is not, by itself, fatal to the chancellor's finding of probable cause.

### IV. THE DISTRICT COURT'S LIMITATION OF TESTIMONY

**A. Standard of Review**

"The conduct of a criminal trial is a matter within the discretion of the court. . . . [S]uch discretion will not be disturbed in the absence of a clear showing of abuse." *United States v. Wade*, 364 F.2d 931, 936 (6th Cir. 1966). Even if there is a clear showing of abuse, "a judge's rulings will not be the basis for

reversal of a criminal conviction unless a defendant's substantial rights are affected." *United States v. Terry*, 729 F.2d 1063, 1067 (6th Cir. 1984) (applying FED. R. EVID. 611).

## B. Analysis

Ferguson claimed in his brief that "[d]ue to the denial of the trial court to allow counsel to assess the 'totality of circumstances' that the officer knew at the time the warrant was issued, the Appellant's Fourteenth Amendment Due Process Rights were violated."[5] Appellant Br. at 8. During the incident in question, Ferguson called the affiant, Harrison, as a witness in the hearing on the motion to suppress challenging the existence of probable cause. As Ferguson's attorney tried to ask questions about actions that Harrison might have taken, but not reported, to corroborate the CI's tip, the district court repeatedly emphasized skepticism over the value of the testimony. After interrupting the questioning three times with concerns about relevancy, the district court decided that Harrison's efforts to corroborate the CI's tip, beyond what was described in the affidavit, were irrelevant to the evaluation of probable cause, and the court stopped this line of questioning. In response, Ferguson concluded his questioning of Harrison.

A trial judge has broad discretion to control testimony in her court to ensure that only relevant evidence is presented and that the court's time is not wasted. *See* FED. R. EVID. 611(a) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."). Accordingly, "courts may curtail or entirely preclude questioning as to any matter of questionable relevance." 28 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE AND PROCEDURE § 6164, at 357 & n.49 (1993).

---

[5]A federal judge acting in his official capacity could not violate the appellant's rights under the Fourteenth Amendment, *see, e.g.*, *Shelley v. Kraemer*, 334 U.S. 1, 18 (1948) ("[The Fourteenth] Amendment by its terms applies only to the States."), but we can evaluate this claim as though it were appropriately raised under the Fifth Amendment.

We cannot conclude that the district court judge's actions constitute an abuse of discretion. Ferguson was trying to elicit testimony as to any additional information the affiant Harrison had but did not disclose at the time the warrant was issued. Generally speaking, however, the sufficiency of an affidavit is judged solely upon "the adequacy of what it does contain, not on what it lacks." *Allen*, 211 F.3d at 975. The one exception to this general rule is that in a *Franks* hearing, pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant can try to show that the affiant omitted some material fact that would have swayed the magistrate's probable-cause determination. *See Hale v. Kart*, 396 F.3d 721, 726 n.4 (6th Cir. 2005). Although such questions about Harrison's knowledge at the time he requested a warrant would be relevant in a *Franks* hearing, Ferguson was not in a *Franks* hearing when his attorney attempted to ask these questions. Thus, the questioning was not relevant in the context in which it was occurring.

Furthermore, to qualify for a *Franks* hearing, a defendant must "make[] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [ ] the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-156; *see also United States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001), *cert. denied*, 535 U.S. 1026 (2002). It appears from the record that Ferguson could not have made the substantial preliminary showing necessary to qualify. While Ferguson had asked both of his attorneys to seek a *Franks* hearing, his attorneys refused on ethical grounds. J.A. at 193 (Tr. at 5:12-17) ("Both Mr. Brown[, Ferguson's original attorney,] and I have told Mr. Ferguson that we can't ethically do that, and I'm not going to perpetrate fraud on a court.").

Accordingly, we cannot conclude that it was an abuse of discretion for the district court to limit testimony that could have been relevant only for a hearing that Ferguson was not then seeking, and was apparently not entitled to obtain.

## V. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.