NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0015n.06

No. 20-1884

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| CLIFFORD IDRIS BELL, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

FILED
Jan 06, 2022
DEBORAH S. HUNT, Clerk

Before: GIBBONS, READLER, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. Confidential informants routinely provide tips to the police that drugs will be found at particular places. When do these tips create the probable cause necessary for a warrant to search a home? This case requires us to consider that question. According to an officer's affidavit in support of a warrant, a confidential informant told the officer that a cocaine sale had recently occurred at the home of Clifford Bell in Grand Rapids, Michigan. Bell now claims that this affidavit lacked enough information to establish probable cause. Yet the affidavit showed the informant's basis of knowledge: the informant had visited the home in the past 72 hours and seen the sale firsthand. It also showed the informant's trustworthiness: the informant had previously participated in controlled drug buys and given accurate information about other drug dealers. It lastly showed that the officer had corroborated the tip: he confirmed that Bell lived at the home and had several prior drug-related arrests. Under our cases, this collective information

sufficed for a state judge to find probable cause and issue the warrant. We thus affirm the district court's denial of Bell's motion to suppress the evidence uncovered during the ensuing search.

I

Officer Tyler Sheppard investigates drug crimes as a member of the "Vice Unit" in the Grand Rapids Police Department. In September 2019, he sought a warrant to search a single-family home at a Grand Rapids address on Hazen Street SE for evidence of cocaine trafficking.

To justify the requested warrant, Officer Sheppard submitted an affidavit that relied primarily on information learned from a "reliable and credible" confidential informant. Aff., R.19-1, PageID 56. According to Sheppard's affidavit, the informant had indicated that cocaine could be purchased from an African American male "named 'Biff AKA Clifford Idris Bell.'" *Id.* Within the last 72 hours, the informant had "observed" cocaine being sold out of the Hazen Street home. *Id.* The informant had also seen a firearm at this home and noted that "there was cocaine still for sale" there when the informant had left. *Id.*

Sheppard's affidavit next included details to corroborate the informant's tip. Sheppard explained that he used "multiple police databases" to identify Bell and confirm that he lived at the Hazen Street home that the informant had recently visited. *Id.* Sheppard also noted that he discovered that Bell had four prior felony drug arrests and that his criminal history included "an assault with the intent to do great bodily harm involving a firearm." *Id.*

Sheppard's affidavit lastly provided information about the informant's trustworthiness. The Vice Unit had known the informant for "just under a year," and the informant had made "multiple controlled purchases" of illegal drugs. *Id.* The informant had also provided "information on several drug traffickers" that the Vice Unit had "verified" using "police records, personal observations, other police officers and other informants." *Id.*

Based on Sheppard's affidavit, a state judge issued a warrant to search Bell's home. The search turned up multiple firearms, marijuana and marijuana plants, trace amounts of cocaine, a digital scale, and over $2,000 in cash. After the search, Bell admitted that he had hidden the handguns found in the home because he knew that, as a felon, he could not legally possess them.

A grand jury indicted Bell for, among other crimes, being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1). Bell moved to suppress the evidence that the police had uncovered, arguing that Sheppard's affidavit did not establish probable cause to search his home and that the affidavit was so bare bones that the good-faith exception to the exclusionary rule should not apply. Denying Bell's motion, the district court found that probable cause supported the warrant. Bell pleaded guilty to being a felon in possession but reserved his right to appeal the denial of his suppression motion. His prior felony convictions made him subject to the Armed Career Criminal Act's 15-year minimum term of imprisonment. *See* 18 U.S.C. § 924(e)(1). The district court sentenced him to that minimum term. Bell now appeals the denial of his suppression motion.

II

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To obtain a search warrant, therefore, a police officer must show through testimony (typically in the form of an affidavit) that "probable cause" exists to search a home for evidence of a crime. *United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021). But "[p]robable cause 'is not a high bar.'" *United States v. Sheckles*, 996 F.3d 330, 337 (6th Cir. 2021) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)). It requires only a "fair probability" that evidence of a crime will be found in the home. *United States*

*v. Hines*, 885 F.3d 919, 923 (6th Cir. 2018) (citation omitted). To decide whether this fair probability exists, courts must engage in a commonsense assessment of all the information in the officer's affidavit. *Id.*; *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Officers often rely on tips from informants to obtain search warrants. *See, e.g.*, *Gates*, 462 U.S. at 230–32; *United States v. Crawford*, 943 F.3d 297, 302 (6th Cir. 2019). To evaluate whether a tip establishes probable cause, courts consider both the veracity or reliability of the informant (is the informant sufficiently trustworthy?) and the underlying basis for the informant's knowledge (how did the informant learn about the criminal activity?). *See, e.g.*, *Gates*, 462 U.S. at 228–30, 229 nn.4–6; *United States v. Smith*, 182 F.3d 473, 478, 481 (6th Cir. 1999). When courts assess the informant's trustworthiness, the type of informant matters. *See United States v. Baker*, 976 F.3d 636, 649 (6th Cir. 2020). Named informants are presumptively more reliable than known-but-unnamed informants, who are presumptively more reliable than anonymous sources. *See, e.g.*, *United States v. Kinison*, 710 F.3d 678, 682–83 (6th Cir. 2013); *United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (en banc). When courts assess the informant's basis of knowledge, detailed statements or statements showing the informant's firsthand knowledge of the criminal activity receive greater weight than conclusory accusations of criminal activity or those based on rumors. *See Smith*, 182 F.3d at 481.

Ultimately, though, a stronger showing of one of these two "closely intertwined" factors can make up for the absence of the other one under the governing totality-of-the-circumstances test. *Gates*, 462 U.S. at 230, 233–35. If, for example, an affidavit lacks information about a confidential informant's trustworthiness, the affidavit can suffice if it gives specific details about the illegal activity or indicates the informant learned of that activity firsthand. *See Hines*, 885 F.3d at 924–25. If, by contrast, an affidavit lacks information about an informant's basis of knowledge,

the affidavit can suffice if it explains why the informant is highly credible. *See Gates*, 462 U.S. at 233–34. And if an affidavit combines a little information on the informant's trustworthiness with a little more on the informant's basis of knowledge, the combined information likewise can suffice to establish probable cause. *See United States v. Moore*, 661 F.3d 309, 312–13 (6th Cir. 2011). Finally, an officer's independent investigative work corroborating the informant's tip can further support a showing of probable cause. *See Smith*, 182 F.3d at 479–81.

When considering a defendant's motion to suppress evidence uncovered through the use of a search warrant, federal courts must defer considerably to the issuing judge's initial decision that an officer's affidavit established probable cause under this legal framework. *Gates*, 462 U.S. at 236. The courts ask only whether that judge had a "substantial basis" for the probable-cause conclusion. *United States v. Christian*, 925 F.3d 305, 310 (6th Cir. 2019) (en banc). At the same time, a circuit court reviews a district court's answer to this legal question de novo. *See United States v. Brown*, 732 F.3d 569, 572–73 (6th Cir. 2013); *see also Sheckles*, 996 F.3d at 337–38.

Applying these rules here, we conclude that the state judge had a "substantial basis" to find probable cause that police would uncover drug-trafficking evidence at Bell's Hazen Street home. *Christian*, 925 F.3d at 310. According to Officer Sheppard's affidavit, a known-but-unnamed informant indicated that "Biff AKA Clifford Idris Bell" was selling cocaine. Aff., R.19-1, PageID 56. The informant also noted that cocaine had been sold from the Hazen Street home within the last 72 hours and that a firearm was located there. *Id.* This tip suffices to establish probable cause that the home contained evidence of a crime so long as the affidavit adequately demonstrated the confidential informant's trustworthiness, basis of knowledge, or both. *See, e.g.*, *Hines*, 885 F.3d at 923–25; *Moore*, 661 F.3d at 313–14.

And notably, Sheppard's affidavit contained information on both items. Consider, first, the informant's "basis of knowledge." *See, e.g.*, *Hines*, 885 F.3d at 924–25. The affidavit made clear that the informant's tip about the activity at the Hazen Street home did not come from rumors about Bell or what was happening inside his house. The informant had personally visited the home, observed the cocaine sale and firearm firsthand, and noted that a supply of cocaine remained when the informant had left. Aff., R.19-1, PageID 56. Consider, second, the informant's "veracity" or "reliability." *See, e.g.*, *United States v. Martin*, 526 F.3d 926, 937 (6th Cir. 2008). The affidavit made clear that the Vice Unit had worked with this particular informant for about a year and that the informant had participated in multiple successful controlled buys. Aff., R.19-1, PageID 56. It also made clear that the informant had previously provided information about local drug dealers, the accuracy of which the Vice Unit had independently verified. *Id.*

Lastly, Officer Sheppard's independent police work corroborated the informant's tip here. Sheppard looked at police databases to confirm that Bell lived at the home that the informant had visited. *Id.* Sheppard also discovered that Bell had a history of drug-related arrests. *Id.*; *cf. United States v. Mitchell*, 2021 WL 5772534, at *4 (6th Cir. Dec. 6, 2021); *United States v. Wagers*, 452 F.3d 534, 541 (6th Cir. 2006).

Given all of this information, it should come as no surprise that we have previously affirmed findings of probable cause for similar affidavits. In *Moore*, for example, an officer noted that a confidential informant had seen cocaine sales at the relevant home within the last five days. 661 F.3d at 311. The officer added that the informant had provided information in the past that resulted in two drug seizures. *Id.* We held that this information provided a substantial basis to find probable cause because it sufficiently described the informant's basis of knowledge and trustworthiness. *Id.* at 312–13. We also explained that we had upheld probable-cause findings "in the

vast majority of cases involving similarly worded search warrants[.]" *Id.* (citing *United States v. Williams*, 224 F.3d 530, 531 (6th Cir. 2000); *United States v. Finch*, 998 F.2d 349, 352 (6th Cir. 1993)). We reach the same result for the similar affidavit in this case.

Bell disagrees. Citing *United States v. Ferguson*, 252 F. App'x 714 (6th Cir. 2007), he argues that, unlike tips from *named* informants, tips from *confidential* informants require officers to engage in independent police work to corroborate the tips. He is mistaken. True, *Ferguson* distinguished named informants from confidential ones. *See id.* at 720–21. Our caselaw does not require affidavits to include much information about a named informant's trustworthiness or prior interactions with police. *See Kinison*, 710 F.3d at 682. We, by contrast, generally require affidavits to include "bolstering information" for tips by confidential informants. *Ferguson*, 252 F. App'x at 721. But this additional information need not take the form that Bell suggests—"an independent police investigation." *United States v. May*, 399 F.3d 817, 823 (6th Cir. 2005); *see also United States v. McCraven*, 401 F.3d 693, 698 (6th Cir. 2005). Aside from that sort of investigation, an affidavit can also bolster a confidential informant's tip by describing the informant's basis of knowledge, *see Hines*, 885 F.3d at 924–25, or general reliability, *see Martin*, 526 F.3d at 937. Here, the affidavit did both. It noted that the informant had been to the house and seen the drugs and firearm firsthand. And the affidavit explained that the informant had previously participated in controlled buys and given accurate information. In all events, Sheppard engaged in independent police work to corroborate the tip. He confirmed that Bell lived at the address and had prior drug-related arrests.

So Bell turns to offering reasons why Sheppard's police work did not suffice to "corroborate" the informant's tip. He notes that the affidavit nowhere expressly indicated that the informant said that Bell *lived* at the Hazen Street home. Yet Bell reads the affidavit far too strictly, not with

the common sense that our cases require. *See Christian*, 925 F.3d at 310. According to the affidavit, the informant told Sheppard both that cocaine could be bought from Bell and that the informant had recently visited the Hazen Street home and seen a cocaine sale there. While the affidavit does not explicitly say that *Bell* was the seller at the Hazen Street home, the affidavit read "as a whole" would allow a state judge to make that commonsense inference. *Allen*, 211 F.3d at 975; *see Christian*, 925 F.3d at 310. Regardless, search warrants (unlike arrest warrants) "are directed at places, not people." *United States v. Miller*, 850 F. App'x 370, 374 (6th Cir. 2021) (citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 (1978)). Sheppard thus had to show only a fair probability that evidence of cocaine trafficking would be found at the Hazen Street home, not that Bell himself was the drug dealer. And his affidavit noted (albeit in the passive voice) that cocaine had been sold at the Hazen Street home, that Bell lived there, that cocaine could be bought from Bell, and that he had prior drug-related arrests. This information sufficed to establish the required "nexus" between the home to be searched and the items to be found. *See Reed*, 993 F.3d at 447–49.

Bell also claims that his criminal history did not corroborate the informant's tip because the informant did not mention this criminal history. But he cites no case that says the police may use a suspect's criminal history to corroborate a tip only if the informant discloses that history to the police. *Cf. Martin*, 526 F.3d at 937. That rule would make no sense. A reasonable person would consider "predilections revealed by past crimes or convictions as part of the inquiry into probable cause" whether or not the informant knew of the past crimes. *Wagers*, 452 F.3d at 541. (Bell does not challenge the fact that the affidavit identified only prior drug arrests.)

Bell ends by nitpicking the affidavit's statements about the informant's trustworthiness, citing various things that the affidavit does not contain. The affidavit, for example, does not say

8

that Sheppard had personally worked with the informant before; it says only that the Vice Unit had done so. The affidavit likewise does not say that the informant was the one who provided the tips that led to the informant's prior controlled drug buys. And it does not say that the informant's prior disclosures of information about other drug dealers resulted in any convictions or arrests. But we assess the sufficiency of an affidavit based on what it contains, "not on what it lacks, or on what a critic might say should have been added." *Allen*, 211 F.3d at 975; *see Brown*, 732 F.3d at 573–74. Contrary to Bell's claim, moreover, we do not require affidavits to include "detailed factual" statements about the informant's prior work with law enforcement for a judge to find the informant adequately trustworthy. *May*, 399 F.3d at 826. We also do not require the informant's prior tips to have led to arrests or convictions. *Cf. Moore*, 661 F.3d at 313. And we do not require the affiant officer (as opposed to the officer's colleagues) to have worked with the informant previously. *See Crawford*, 943 F.3d at 306.

When viewing all of the information in Sheppard's affidavit in a commonsense fashion, the state judge had a substantial basis to conclude that probable cause existed to search Bell's home for evidence of cocaine trafficking. The search thus did not violate the Fourth Amendment, and the district court properly denied Bell's motion to suppress.

We affirm.